*Debe confirmarse la sentencia apelada.*

ETIENNE TOTTI, demandante y apelado, *v.* AGUSTÍN FERNÁNDEZ y JESÚS BENÍTEZ, demandados y apelantes.

No. 4827.—*Sometido:* Diciembre 18, 1929. *Resuelto:* Febrero 28, 1930.

*G. Benítez Gautier,* abogado de los apelantes; *M. Acosta Velarde,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

En la relación del caso y opinión que se unen a la sentencia objeto del presente recurso, se hallan los siguientes párrafos:

"Alega el demandante en esta acción, y admiten los demandados, que el día 18 de abril de 1927 los demandados suscribieron y le entregaron un pagaré que copiado a la letra dice así:

" 'Por 825.00—Valor al 30 de octubre de 1927. Pagaremos man-

comunada y solidariamente, en esta ciudad de San Juan, P. R., a don Etienne Totti o a su orden el día 30 de octubre de 1927, la suma de ochocientos veinte y cinco dólares moneda corriente de los Estados Unidos de América, por valor recibido. Nos comprometemos a satisfacer las costas, gastos y honorarios de abogado de que se valga el tenedor de este documento en caso de reclamación judicial, a pagar el interés de doce por ciento anual en caso de demora; y nos sometemos expresamente a las Cortes de Justicia de esta ciudad, para los actos y diligencias que del mismo se deriven.—San Juan, P. R., abril 18 de 1927. (Fdo.) Agustín Fernández. (Fdo.) Jesús Benítez. (Fdo.) A. H. Géigel.'

"Que los demandados han sido requeridos de pago, y que no han pagado el importe, ni parte alguna del mismo al demandante ni a persona alguna.

"Alega además, y ha probado, que el referido pagaré lo entregó al Banco Popular; que recibió de éste su importe, y que en la fecha de su vencimiento, y al no ser satisfecho el mismo por los demandados, lo recogió, siendo por tanto su actual tenedor.

"Los demandados en su contestación alegan: que admiten haber suscrito y entregado al demandante el 18 de abril de 1927, el pagaré que se transcribe en el hecho segundo de la demanda, pero niegan que el otorgamiento y la entrega de dicho pagaré lo realizaron por valor recibido, o por valor alguno de cualquiera naturaleza, alegando en contrario que dicho pagaré lo suscribieron y entregaron para acomodar al demandante y para que éste lo utilizara como garantía colateral en un préstamo que quería concertar con el Banco Popular de Puerto Rico.

"Y además que al suscribir y entregar la obligación no recibieron valor alguno del demandante, y sólo lo hicieron para 'acomodar a éste a fin de que lo utilizara como garantía colateral en un préstamo que quería concertar con el Banco Popular y según fué propuesto por el demandante y convenido entre él y los demandados.''

La sentencia dictada por la corte de distrito fué a favor del demandante, condenando a los demandados al pago de $825, intereses, y costas y gastos del pleito. Y contra ella se ha interpuesto la apelación, fundada en catorce señalamientos de error. El primero y el segundo de ellos se argumentan conjuntamente. Se enuncian así:

"I.—La corte erró al estimar que el pagaré objeto de este pleito se presume un documento mercantil.

"II.—La corte erró al determinar que las obligaciones de esta naturaleza están regidas por las disposiciones del Código de Comercio."

██ Aunque sobre estos dos extremos (uno en realidad) se argumenta muy hábilmente por la representación de la parte apelante, no hemos llegado al convencimiento de la existencia y la importancia de este error.

Es algo que está fuera de duda en esta jurisdicción, que los pagarés y documentos "a la orden" se presumen documentos mercantiles. Probablemente la sentencia que más ha influído en la declaración de esta doctrina en Puerto Rico ha sido la del Tribunal Supremo de España de fecha 25 de enero de 1898, en recurso de casación interpuesto por Antonio Silvestre Ayolli en pleito con la sucursal del Banco de España en Valencia. Uno de los considerandos de dicha sentencia lee como sigue:

"Considerando que la expedición de pagarés a la orden y su endoso deben reputarse actos mercantiles, con arreglo al artículo 2do. del Código de Comercio, por ser de los expresamente definidos en este cuerpo legal, y, por lo tanto, que hay la presunción de que proceden de operaciones de comercio, salvo prueba en contrario."

En el caso *Moreno* v. *Sucesión Bahr,* 3 D.P.R. 156, segunda edición, se trató de un pagaré librado "a la orden," y procedente de un préstamo comercial. En el caso *Hernández* v. *Muñoz,* 10 D.P.R. 17, se citó con aprobación la doctrina de la sentencia del Tribunal Supremo de España de 25 de enero de 1898. Y en el caso *Rosaly* v. *Alvarado,* 17 D.P.R. 109, se confirmó la misma doctrina. En *Vázquez* v. *Laíno,* 23 D.P. R. 235, se explicó la decisión del caso *Ochoa Hermanos* v. *Lanza* (17 D.P.R. 420) en donde se había dicho que los pagarés a la orden son documentos mercantiles; y se especificó la existencia de la presunción controvertible o *juris tantum* en cuanto al carácter de mercantil de esos documentos. En el caso *Román* v. *Martínez,* 25 D.P.R. 654, se confirmó la doctrina, expresándose en la opinión una de las razones básicas de la misma, o sea que la extensión de un pagaré

"a la orden" lo hace negociable por endoso sin necesidad de notificar la transacción al deudor.

De acuerdo con esas decisiones debe ser entendida la del caso *Barros* v. *Padial,* 35 D.P.R. 258, en la que se habló de ser mercantil el pagaré a la orden, lo que debe entenderse en el sentido de que se reputa mercantil. No puede caber duda de que ése es el verdadero sentido de la decisión, en la que se encuentran las siguientes palabras:

"El carácter presuntivo de ser comercial un pagaré librado a la orden es universal y aplicable a todos los pagarés."

Y se aplica el método de Euler, para hacer, como se hace, gráfica y perfectamente comprensible la explicación. Añádese después:

"Si se da un pagaré a la orden, el que lo expide puede decirse que ha convertido un simple préstamo en una operación mercantil."

Esta es la presunción, que se halla sujeta a controversia.

Es verdad que la corte de distrito en la opinión que dictó, ha hecho mención de que el pagaré de que se trata, por ser a la orden, se presume mercantil; de este primer aserto parte la corte para declarar que la excepción *non numerata pecunia* no es aplicable a los pagarés en que se consigna la frase "valor recibido." Y cita la decisión en el caso *Crédito y Ahorro Ponceño* v. *Beiró,* 32 D.P.R. 817, en que se dijo que un deudor que suscribe una obligación con el carácter de deudor solidario no puede en su defensa, alegar que no se benefició con el dinero del préstamo.

■ Pero, aparte de que la apelación no se da contra los razonamientos del juez sentenciador, siempre que la conclusión a que éste llegue en la sentencia, sea correcta, nos parece que la corte inferior en este caso, no decidió por virtud del carácter presuntivo del documento, sino por el estudio y apreciación de la prueba total.

En la opinión del juez de distrito encontramos un párrafo que es así:

"Cualesquiera que hayan podido ser las transacciones anteriores que mediaron entre las partes, es lo cierto que lo que tenemos ante nosotros es el cobro de una obligación legítimamente contraída. Si ésta se hizo para librar a un tercero de cierta responsabilidad que tenía con el demandante, los demandados, por sus propios actos, se obligaron para con el demandante, librando al tercero de la obligación. No hay duda de que ellos pueden repetir contra la persona beneficiada, pero este derecho en nada aminora la responsabilidad contraída. Pérez v. Sociedad Agrícola Santiago Hnos., 37 D.P.R. 17; Crédito v Beiró, *supra*."

Por lo que se ve, la cuestión de si es o no presuntivamente mercantil el documento, no es la que ha decidido el caso; y siendo así los señalamientos de error I y II no son de estimar en esta apelación.

 El tercer señalamiento de error se enuncia del siguiente modo:

"La corte erró al decir que la defensa de que no hubo causa o consideración no tiene eficaz aplicación a los pagarés en que se consigna la cláusula de *valor recibido*."

La parte apelante, al argumentar este señalamiento, entra en el estudio de la causa en los contratos; y la relaciona con su contención de que el pagaré se firmó por los señores Fernández y Benítez Castaño, para acomodar al señor Totti. A propósito de este particular cita la jurisprudencia de varios Estados en cuanto a *accomodation bills or notes* y la obra de Joyce, en cuanto a defensas en documentos comerciales. Realmente, aunque fueran una realidad en el terreno de los hechos los casos de "acomodación" (*sic*) no encontramos razón alguna para suprimir la vigencia de nuestro Código de Comercio. Si nuestra ley no fuera suficiente a cubrir el caso, tendríamos que buscar la solución, de acuerdo con el artículo 7 del Código Civil, en los principios de equidad en el sentido en que tales principios se toman en el precepto apuntado, o sea teniendo en mente "la razón natural de acuerdo con los principios generales de derecho, y los usos y costumbres aceptados y establecidos"; pero no podríamos,

porque para ello no tenemos autoridad, convertir los dictados de la jurisprudencia de otro Estado, en ley nuestra; la ley es obra del poder legislativo, y no de los tribunales, que no pueden crearla ni en forma directa, ni indirecta.

En cuanto a la causa en los contratos nuestro Código Civil, contiene los elementos necesarios para que toda *causa* pueda clasificarse y caber en los artículos 1241, 1242, 1243 y 1244. Es el trabajo del jurista examinar, estudiar y determinar el caso que ante sí tiene, a la luz de los principios, y en su caso las reglas, de los preceptos del código.

En el artículo 1241, Código Civil, se establece la diferencia entre las causas según la naturaleza del contrato; en los onerosos, la prestación o servicio, o la promesa; en los remuneratorios, el servicio o beneficio a remunerar; en los de pura beneficencia, la liberalidad del bienhechor. Y sostenemos que no hay un solo contrato que no quepa, en cuanto a la causa, en uno de esos tres conceptos.

Sólo un caso se establece, de ineficacia; el del artículo 1242, en que se expresa que los contratos con causa ilícita *no producen efecto alguno* (nuestras las itálicas). Se establece luego en el artículo 1243 la calidad de anulables de los contratos con expresión de una causa falsa, salvo cuando se pruebe que había una verdadera y lícita, dando así vida a la íntima esencia y verdad en la causa, sobre la exteriorización o expresión. Y se determinan en el artículo 1244, las presunciones controvertibles de existencia de la causa y licitud de la misma.

Supongamos que en este caso se haya expresado inexactamente la causa del pagaré al hablarse de valor recibido; apuntemos que en ese caso el deudor va contra la causa, y niega el valor recibido teniendo para ello el amparo del artículo 1243 del Código, y hasta la excepción que se hace en el número 2 del artículo 101 de la Ley de Evidencia, cuando al estimar concluyente la verdad de los hechos relatados en un documento escrito, entre las partes y sus causahabientes exceptúa "la relación de una compensación" (texto español),

o "the recital of a consideration" (texto inglés) ; y aun con esto, el acreedor prueba que hubo una causa verdadera y lícita, como el pago que a Totti debía hacer Arturo H. Géigel; y entonces el contrato subsiste, y las obligaciones de los señores Benítez y Fernández son exigibles. La corte de distrito que dictó la sentencia apelada ha estudiado, recta y acertadamente, el problema, sin aislar la materia de hecho de la de derecho; y como de hecho, encuentra que

"Puede ser que los demandados fueron sorprendidos en su buena fe al suscribir la obligación de que es objeto este pleito; pero en nada puede esto perjudicar los derechos del demandante que surgieron a virtud de los actos y conducta de los propios demandados. Nada hay en la prueba que indique que Totti indujera a los demandados, o a alguno de ellos, a suscribir y entregar el mencionado pagaré. La suscripción y entrega del mismo se obtuvo sin que Totti mediara. ¿Puede alegarse la defensa de que fué suscrito y entregado para acomodar a éste, esto es, para facilitar que éste hiciera un préstamo? A nuestro juicio la pregunta debe contestarse en la negativa. Como dice un comentarista, 'el hombre, que es autor de sus hechos, debe ser responsable de sus resultados.' "

Así se lee en la opinión de la corte.

Y de lo que son los hechos en el caso, responde el párrafo de la misma opinión que dice:

"De prevalecer la teoría de los demandados, sufriría el demandante un gran perjuicio, porque cancelada la obligación que con él tenía contraída una tercera persona, no tiene ahora contra quién repetir y se vería así burlado en sus derechos e injustamente privado de su propiedad."

Verdaderamente, el fundamento de la corte de distrito se encuentra, más que en ninguna otra cosa, en la apreciación de la prueba en el caso.

Si se estudian un poco los distintos testimonios, hemos de convenir en que la inferencia que se impuso al ánimo del juzgador fué la de que el pagaré firmado por los señores Benítez, Fernández y Géigel a favor del señor Totti, se entregó a éste para pagarle lo que Géigel le adeudaba. Agustín Fernández es un amigo de Géigel, con quien ha

tenido relación de negocios; y es solamente un conocido de Totti. Géigel va a buscar a Fernández para que le firme y entregue el pagaré, que no lo ha pedido a Totti, con quien no habla siquiera acerca del asunto. No está en lo lógico creer que Fernández va a comprometer su crédito por una persona a quien apenas conoce, y que nada le pide. Y del resto del testimonio en el caso, aparece que el testigo Campos estuvo presente cuando el demandado Fernández firmó el pagaré, y oyó a Géigel decir a Fernández que aquella firma la necesitaba para garantizar a Totti lo que le lebía; el testigo Juan Rodríguez, cuñado de Géigel, habla de la deuda de éste para con Totti por construcción de una casa, y de que Géigel pagó a Totti en dinero y pagarés, uno de ellos suscrito por Fernández; el demandado Benítez, por lo que declara, no habló con Totti antes de firmar la primera obligación, y affrma que él no daba su firma más que para el Sr. Totti, y no para Géigel, y así se lo dijo a éste.

Nos parece de suma importancia la declaración del Sr. William Biscombe, que era gerente del Banco Popular cuando declaró, y que afirmó que conoce al Sr. Totti, y que éste tiene crédito en el Banco Popular, y para obtener un préstamo de $2,000 no necesita otra firma, y le bastaría con la de su esposa y la de él para obtener un préstamo así.

Sin duda alguna el juez sentenciador dió entero crédito a la prueba del demandante.

■ Debe citarse aquí la doctrina legal declarada por este tribunal en los siguientes casos:

*Cintrón & Aboy* v. *Solá*, 22 D.P.R. 262, en donde se dijo:

". . . No importa que Celestino Solá dejara de beneficiarse del préstamo; él convino en ser deudor solidario para servir a Solá e Hijo, y ese convenio quedó consignado en el pagaré al ser firmado éste por el demandado como deudor solidario. La ley del contrato quedó establecida en el documento como última expresión de la voluntad de las partes, y a ella tiene que someterse Celestino Solá."

Tiene esta doctrina aplicación también al cuarto señalamiento de error, que no ha de discutirse aquí extensamente,

ya que adolece del defecto de referirse, no a la sentencia, sino a algunas de las frases empleadas por el juez en su opinión; y ya hemos dicho en diversas ocasiones, y de uniforme y constante modo, que los razonamientos del juez no constituyen base de señalamiento de error, o de apelación.

■ El quinto señalamiento es como sigue:

"La corte erró al determinar que cualesquiera que hayan podido ser las transacciones anteriores que mediaron entre las partes, es lo cierto que lo que tenemos ante nosotros es el cobro de una obligación legítimamente contraída."

Arguméntase aquí por la parte apelante sobre la base de que no hubo consentimiento por parte de los demandados, al firmar el pagaré.

No existe el error señalado. En un documento como el que se ha presentado, es muy difícil sostener el error en el consentimiento. Para que el error vicie el consentimiento, y por consecuencia, el contrato, es preciso que recaiga sobre la esencia del mismo, y en los casos expresos del Código, acerca de la persona, cuando por ella, o por razón de ella se determina la voluntad del contratante.

En un caso como éste, y con la prueba que al mismo se ha traído, no cabe sostener que hubo error al consentir.

■ El sexto señalamiento se funda en que la corte aceptó como hipotético que el documento se hizo para librar a un tercero de cierta responsabilidad. No creemos exacta la apreciación hecha por los apelantes; es verdad que la corte ha dicho, refiriéndose a la obligación:

"Si ésta se hizo para librar a un tercero de cierta responsabilidad que tenía con el demandante. . ."

Pero hay que tomar en su integridad la frase citada, que concluye así:

". . . los demandados, por sus propios actos se obligaron para con el demandante, librando al tercero de la obligación."

Y es necesario tener en cuenta que la corte en el párrafo que precede al que citamos acaba de declarar rotunda e ine-

quívocamente que lo que tiene ante sí es "el cobro de una obligación legítimamente contraída."

No es cosa de que un apelante pueda sostener su recurso sobre frases aisladas de la "opinión" del juez, ni aun sobre párrafos enteros, cuando la sentencia, con aquellas frases, o sin ellas, es justa y se acuerda con los preceptos de ley.

■ Arguméntanse conjuntamente los señalamientos sexto, séptimo, octavo, noveno, décimo, undécimo y duodécimo:

"VI.—La Corte erró al aceptar como hipótesis que la obligación se hizo para librar a un tercero de cierta responsabilidad.

"VII.—La corte erró al entender que los demandados-apelantes por sus propios actos se obligaron para con el demandante.

"VIII.—La corte erró al determinar que los derechos del demandante surgieron a virtud de los actos y conducta de los demandados-apelantes.

"IX.—La corte erró al determinar que no hay nada en la prueba que indique que Totti indujera a los demandados-apelantes o a alguno de ellos a suscribir y entregar el mencionado pagaré.

"X.—La corte erró al determinar que no puede alegarse la defensa que fué suscrito y entregado para acomodar al demandante, esto es, para facilitarle que éste hiciera un préstamo.

"XI.—La corte erró al determinar que la conducta de los demandados-apelantes les hace responsable para con aquél de la obligación contraída y no pueden invocar con éxito las defensas que alegan.

"XII.—La corte erró al determinar que al suscribirse el pagaré la presunción surgió de que lo hacían con la intención de someterse a todos sus efectos jurídicos y el demandante tenía derecho a descansar en esta presunción."

Los apelantes, registran la opinión de la corte, extraen de ella las frases y razonamientos que creen convenientes para la argumentación, y entablan ésta, trayendo de nuevo la teoría del consentimiento, y algunos tópicos más, ya discutidos. Y en el fondo, más que a otra solución, van al ataque a la apreciación de la prueba, sin señalar manifiesto error, pasión, prejuicio, o parcialidad.

Citar aquí las conocidas definiciones de la actitud de este Tribunal Supremo en cuanto a que el objeto de una apelación es la sentencia, no los razonamientos de la opinión, y a que

la apreciación de la prueba, no será intervenida en apelación más que donde se alegue y demuestre que en ella hubo manifiesto error, o que la influencia de pasión, prejuicio o parcialidad tuvieron en ella una participación, sería obra, no difícil, pero sí enojosa, ya que las decisiones en la materia, uniformes y constantes, son numerosas, y no requieren ser de nuevo citadas.

Basta con lo expresado para decidir en forma negativa en cuanto a estos señalamientos de error.

Y si la corte de distrito tuvo ante sí una obligación legalmente contraída, su decisión condenando a los demandados al pago, era la justa. Disponemos así del señalamiento de error que aparece bajo el ordinal décimo-tercero.

En cuanto al error en la imposición de las costas (Décimo-cuarto) nos parece perfectamente justificada la determinación de la discreción de la corte al imponerlas a los demandados, que resistieron el pago.

*Por las razones apuntadas, debe confirmarse la sentencia apelada.*