HORTENSIA PIERLUISI GRAU, demandante y apelada, *v.* MANUEL MONLLOR, ANA GÓMEZ y TOMÁS MONLLOR, demandados y apelantes.

No. 4501.—*Sometido:* Junio 18, 1929. *Resuelto:* Marzo 20, 1931.

*Tous Soto & Zapater,* abogados de los apelantes; *R. Atiles Moreu* y *Guillermo Pierluisi,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

Hortensia Pierluisi Grau presentó demanda jurada en la Corte de Distrito de Ponce en enero de 1927 contra Manuel Monllor, Ana Gómez y Tomás Monllor en cobro de dinero, alegando substancialmente que el 30 de junio de 1914 y con anterioridad a esa fecha y después de ella los demandados tenían constituída en Ponce una sociedad mercantil colectiva que giraba bajo el nombre social de Monllor & Cª., de la que

eran socios gestores Manuel Monllor y Ana Gómez, ejerciendo la última el comercio con el consentimiento de su esposo Tomás Monllor, que era apoderado de esa sociedad; que en la expresada fecha 14 de junio de 1914 y antes de ella dicha sociedad adeudaba a la demandante la cantidad de $1,500, valor recibido en calidad de préstamo al interés del 10 por ciento anual, originada la deuda en virtud de la cesión de una hipoteca propiedad de la actora en favor y beneficio de la mencionada mercantil, por lo que dicha mercantil, por medio de su apoderado Tomás Monllor, suscribió en 30 de junio de 1914 un pagaré que entregó, en el que se obligó a pagar en Ponce el día 30 de junio de 1917 a la orden de Hortensia Pierluisi la cantidad de $1,500, valor recibido a su entera satisfacción, y el interés del 10 por ciento anual abonado cada año; que vencida esa obligación no ha sido pagada en todo ni en parte y tampoco sus intereses, los que hasta la fecha de la demanda ascendían a $1,875; que la mercantil Monllor & Cª. liquidó sus negocios, cesando en ellos, no existiendo actualmente como tal sociedad, que no tiene bienes con los que pagar el capital e intereses debidos, y que la referida deuda fué contraída estando casada Ana Gómez con Tomás Monllor entre los que existía y existe una sociedad legal de gananciales que tiene bienes suficientes para pagar el capital e intereses objeto de la demanda, figurando entre ellos la casa que se describe en la demanda. Por esas alegaciones se solicitó que por el capital e intereses vencidos y los sucesivos fuesen condenados solidariamente los tres demandados. Estos se opusieron a esa reclamación y alegaron ciertas defensas, pero celebrado el juicio recayó sentencia contra los tres demandados condenándolos solidariamente a pagar las cantidades reclamadas. Contra ella interpusieron esta apelación.

El primer motivo del recurso se refiere a la excepción general aducida contra la demanda de no exponer hechos suficientes contra todos los demandados; y el segundo y

tercero por no aducirlos contra Tomás Monllor y contra su sociedad legal de gananciales con Ana Gómez.

 Dicen los apelantes que la demanda no es suficiente porque no alega que se haya hecho excusión de los bienes de la sociedad; que no expresa la extensión y término del poder que tenía Tomás Monllor para que la corte juzgase si era suficiente para obligar a la sociedad por quien firmó el pagaré; que si la deuda procede de la cesión de una hipoteca, debió alegarse que la sociedad hizo efectiva la hipoteca, y que no se alega que Ana Gómez fuese socia colectiva, no siendo igual socio gestor que colectivo.

Según el artículo 127 del Código de Comercio todos los socios que forman la compañía colectiva, sean o no gestores de la misma, estarán obligados personal y solidariamente con todos sus bienes a las resultas de las operaciones que se hagan a nombre y por cuenta de la compañía bajo la firma de ésta y por persona autorizada para usarla; y aunque el artículo 237 declara que los bienes particulares de los socios colectivos que no se incluyeron en el haber social al formarse la compañía no podrán ser ejecutados para el pago de las obligaciones contraídas por ella sino después de haberse hecho excusión del haber social, sin embargo, tal excusión no es necesaria cuando la sociedad deudora carece de bienes, como declaramos en el caso de *M. Lamadrid & Co., Sucrs.* v. *Martorell,* 27 D.P.R. 599, y casos en él citados, por lo que alegando la demanda en este litigio que no existe la sociedad que contrajo la deuda reclamada por haber liquidado sus negocios y que carece de bienes con los que pagar sus deudas, aduce la demanda causa de acción contra los socios individuales de la compañía.

 En la demanda se dice que la mercantil suscribió por medio de su apoderado Tomás Monllor el pagaré cuyo pago se reclama; alegación que es suficiente sin que fuera necesario que expresase los términos y la extensión del poder, de acuerdo con el principio de derecho que dice *"qui facit per alium facit per se,"* siendo esos extremos materia de prueba.

■ Tampoco es insuficiente la demanda porque no exprese que ha sido cobrada la hipoteca originaria de la deuda reclamada, porque si ese crédito hipotecario no ha podido ser cobrado por causas imputables a quien lo cedió, eso sería materia de defensa, impropia de la demanda.

■ También se dice por los apelantes que en la demanda no se alega que Ana Gómez fuese socia colectiva, y que no es igual socio gestor que colectivo, pero para este caso no es de importancia si dicha señora era socia gestora o colectiva, porque alegándose que Monllor & Cª. es una sociedad colectiva esto es por sí suficiente para que todos sus socios, sean o no gestores, respondan personal y solidariamente de las resultas de las operaciones comerciales, de acuerdo con el artículo 237 antes citado.

■ El segundo motivo de error se refiere a no alegarse causa de acción contra Tomás Monllor, esposo de Ana Gómez.

Si bien dicho señor a nada se obligó personalmente, sin embargo, como su mujer ejercía el comercio con su consentimiento, puede ser demandado en esta acción por ser el representante legal de la sociedad de gananciales, ya que los bienes de esa sociedad legal son responsables de las deudas de la sociedad mercantil de su esposa, según dispone el artículo 10 del Código de Comercio, y porque el artículo 1323 del Código Civil declara que serán de cargo de la sociedad de gananciales todas las deudas y obligaciones contraídas por el marido y también las que contrajere la mujer en los casos en que pueda legalmente obligar a la sociedad; siendo uno de éstos el prescrito en el artículo 10 citado del Código de Comercio.

■ Expuesto lo que acabamos de decir, resulta insostenible el error fundado en que no puede dictarse sentencia contra Tomás Monllor, porque como hemos dicho los bienes de su sociedad conyugal son responsables de las deudas de su esposa como socia de Monllor & Cª. Quizás pudo prescindirse de él en este pleito y embargarse bienes de su

sociedad de gananciales al ejecutarse la sentencia contra su esposa, como dicen los apelantes, pero no vemos qué perjuicio pudo causársele al demandarlo en este pleito en el que como parte puede discutir si los bienes de su sociedad están sujetos a las deudas de su esposa como comerciante y también la existencia de la deuda reclamada. Sin embargo, como la sentencia lo condena a pagar solidariamente las cantidades reclamadas en la demanda y como él no tiene responsabilidad para con la demandante sino en cuanto a los bienes de su sociedad con su esposa, la sentencia debe ser modificada para que su condena sea en cuanto a los bienes conyugales.

▇▇▇▇ El cuarto motivo de error es porque la acción ejercitada por la apelada está prescrita, que fué una de las defensas de los demandados apoyada en el artículo 950 del Código de Comercio que fija en tres años el término para el cobro de pagarés a la orden y en el caso de *Barros* v. *Padial*, 35 D.P.R. 258.

La demanda fué presentada mucho tiempo después de esos tres años contados desde el vencimiento de la obligación consignada en el pagaré, por lo que la cuestión en controversia es si a pesar de estar extendido el pagaré a la orden no tiene carácter mercantil por no proceder de operaciones comerciales, teniendo entonces como prescripción el término de quince años, de acuerdo con el artículo 1865 del Código Civil en relación con el 943 del Código de Comercio.

En el caso de *Barros* v. *Padial, supra,* declaró este tribunal que en muchas decisiones nuestras que se citan en él, se ha resuelto que un pagaré extendido a la orden tiene presuntivamente un carácter comercial. Aunque el adverbio *presuntivamente* está en la opinión escrita en inglés por el Juez Sr. Wolf no figura en su traducción al español, como debió hacerse. También se dice en la opinión de ese caso que sostener otra cosa sería intervenir con la regla de *stare decisis* o algo así; que la sentencia del Tribunal Supremo de España de 1904 y las decisiones de Filipinas, deban o no ser distin-

guidas, no pueden variar la regla firmemente establecida por nosotros y con la cual estamos todavía completamente en armonía; que el carácter presuntivo de ser comercial un pagaré librado a la orden es universal y aplicable a todos los pagarés; que en los círculos del método de Euler, uno de los cuales comprende las operaciones comerciales y el otro los préstamos, hay una zona o territorio en la intersección de ellos que es común a ambas clases de operaciones; que dada la universalidad de una presunción se debe probar que el préstamo cae en aquella parte del círculo de préstamos que no está incluída en la zona común de ambos círculos; que cuando existe una presunción, la persona que trata de destruirla debe excluir toda posibilidad, sin que puedan servirle las probabilidades, citando después el artículo 311 del Código de Comercio que reputa mercantil el préstamo en ciertas circunstancias; y que la obligación de probar lo contrario no desaparece porque se demuestre que los préstamos general o frecuentemente no están dotados de un carácter mercantil. Después de esas expresiones, contiene la opinión las siguientes palabras: ''Si se da un pagaré a la orden el que lo expide puede decirse que ha convertido un simple préstamo en una operación mercantil. En ese caso los pagarés a la orden quedarían comprendidos enteramente en el campo de las operaciones mercantiles. En verdad que dada la tendencia general de los estatutos citados, nos inclinamos al parecer de que en Puerto Rico dar un pagaré expedido a la orden constituye por sí una operación mercantil.''

El conjunto de esa opinión es que los pagarés a la orden son presuntivamente comerciales, salvo prueba en contrario, pero como al final de ella se expresa, sin hacerse una declaración categórica, que ''si se da un pagaré a la orden el que lo expide puede decirse que ha convertido un simple préstamo en una operación mercantil'' y que ''nos inclinamos al parecer de que en Puerto Rico dar un pagaré expedido a la orden

constituye por sí una operación mercantil,'' se hace necesario que resolvamos clara y definitivamente si los pagarés librados a la orden siguen siendo presuntivamente comerciales o si son en absoluto mercantiles, sin ser admisible, por tanto, prueba para contradecir ese carácter comercial.

Según el artículo 532 del Código de Comercio los vales o pagarés a la orden que procedan de operaciones de comercio producirán las mismas obligaciones y efectos que las letras de cambio, excepto en la aceptación, que es privativa de éstas. *A contrario sensu,* los pagarés a la orden que no procedan de operaciones de comercio no producirán las obligaciones y efectos de las letras de cambio, que son mercantiles, y, por tanto, puede probarse que no proceden de esa clase de operaciones, quitándoles de ese modo el carácter o presunción de ser pagarés mercantiles por no producir las obligaciones y efectos de las letras de cambio. Por esto el Tribunal Supremo de España en su sentencia de 25 de noviembre de 1898 dijo:

"El carácter mercantil de los pagarés a la orden no se determina por la mera cualidad de ser comerciantes las personas que en ellos se interesan como librador, endosante o tenedor, sino por la circunstancia esencial de proceder de operaciones mercantiles. . .''

Y más adelante dice que cuando no consta que proceden de operaciones mercantiles "es evidente que sólo pueden ser considerados como expresión de la obligación de devolver una cantidad prestada con el interés pactado, a cuyo préstamo tampoco puede darse el carácter mercantil.'' En la de 11 de octubre de 1918 el mismo tribunal declaró que:

". . . para tener el valor jurídico de documento mercantil un pagaré, no basta que contenga las condiciones marcadas en el art. 571 del antiguo Código de Comercio, que hoy señala el 531 del que rige, sino que es preciso además que proceda de operaciones comerciales, según exigía el art. 558 del Código de 1829, y ordena el repetido 531 en su número 7º, requisito que no especifica el pagaré de que se trata, pues aun cuando consigna la frase 'valor recibido' esto

no es lo preceptuado por el art. 532 al objeto de que surta los efectos en el mismo señalado. . .''

El artículo 531 a que se refiere esa sentencia es igual al del mismo número de nuestro código y se refiere a los requisitos que debe tener un pagaré a la orden, siendo el séptimo el de contener el origen y especie del valor que represente. El 532 que hemos citado es reproducción exacta del 532 del Código de Comercio Español. Antes de esas dos sentencias ya había dicho el mismo tribunal en 24 de noviembre de 1894 que los pagarés a la orden no son aquéllos cuyo importe se va a dedicar al comercio sino los que proceden de operaciones comerciales, pues sólo éstos tienen valor jurídico de documentos mercantiles. Y en la de 25 de enero de 1898 declaró el referido tribunal lo siguiente: ''La expedición de pagarés a la orden y sus endosos deben reputarse actos mercantiles, con arreglo al artículo 2º. del Código de Comercio, por ser de los expresamente definidos en este cuerpo legal, y por lo tanto, hay la presunción de que proceden de operaciones de comercio, salvo prueba en contrario.''

Por consiguiente, según nuestro Código de Comercio, que en este particular es igual al de España, la jurisprudencia del Tribunal Supremo de dicha nación y la repetida de nuestra Corte Suprema, los pagarés librados a la orden tienen la presunción *juris tantum* de ser mercantiles a menos que se pruebe que no proceden de operaciones comerciales. En consecuencia, el hecho de firmarse un pagaré a la orden no convierte un simple préstamo en mercantil ni constituye por sí una operación de comercio, porque nuestro estatuto dice que son mercantiles los que proceden de operaciones de comercio. También sostienen los comentaristas la misma doctrina. El Sr. Estasen, en su obra ''Jurisprudencia Mercantil,'' tomo 2, página 235, dice, según se cita en el alegato de la apelada, que ''los vales y pagarés a que el artículo 532 del Código de Comercio otorga la misma eficacia y efecto que las letras de cambio, no son aquéllos cuyo importe se va a

dedicar a operaciones mercantiles, sino los que procedan de operaciones de esta clase''; y en la página 236 agrega: ''El carácter mercantil de los pagarés a la orden no se determina por la mera cualidad de ser comerciantes las personas que en ellos se interesen como librador, endosante, o tenedor, sino por la circunstancia esencial de proceder de operaciones mercantiles''.

Sentado lo que precede veamos si se ha probado que el pagaré no procede de operaciones mercantiles.

En la demanda se alegó que el pagaré se originó a virtud de haber recibido la mercantil Monllor & Cª. los $1,500 en calidad de préstamo por habérsele cedido un crédito hipotecario de la demandante por esa cantidad, cuya alegación fué admitida en la contestación a la demanda; y en el juicio se probó que uno de los socios de Monllor & Cª. solicitó y obtuvo de la demandante que le cediera dicho crédito hipotecario para traspasarlo a otra persona en pago parcial del precio de una casa, y que por dicha cantidad firmó el pagaré como valor recibido. El caso de *Salgado* v. *Villamil,* 14 D.P.R. 457, después de decir que este tribunal ha declarado en otras ocasiones que los pagarés a la orden tienen la presunción de ser mercantiles, salvo prueba en contrario, llega a la conclusión de que los pagarés librados en ese caso no eran comerciales por proceder de la venta de acciones y derechos hereditarios, que en manera alguna puede reputarse como análoga a los actos mercantiles mencionados en el Código de Comercio, porque sólo pueden tener ese carácter, ya la compra, ya la venta, cuando las partes tuvieren el propósito de obtener lucro. En iguales condiciones se halla el préstamo consignado en el pagaré de este caso hecho para entregar el crédito hipotecario como parte del precio de compra de una casa, sin prueba de que fuera para lucro.

Por lo expuesto no son sostenibles los motivos cuarto y quinto del recurso.

Los motivos sexto y séptimo pueden ser conside-

rados y resueltos conjuntamente por referirse a la misma materia. En el primero de ellos se alega que fué error de la corte inferior el no estimar que la obligación reclamada quedó extinguida por el hecho de haber sido declarada en quiebra la sociedad Monllor & Cª. y por la subsiguiente exoneración de todas sus deudas; y el otro por no estimar que la deuda reclamada fué incluída en la relación de acreedores que presentó en la quiebra la referida sociedad.

Con respecto al primero de ellos nos bastará decir que la declaración de quiebra fué solicitada y declarada en cuanto a la sociedad Monllor & Cª. y no en cuanto a sus socios individualmente, y que según reciente resolución del Tribunal Supremo de los Estados Unidos dictada el 20 de febrero de 1928 en el caso de *Liberty National Bank* v. *Bear,* 276 U. S. 215, una petición de quiebra involuntaria contra una sociedad, que por sus términos no pretende que los socios sean declarados en quiebra, como individuos, ni alega que tales personas son insolventes individualmente o que han cometido algún acto de quiebra, no es en su efecto legal una petición contra ellos individualmente; y que una adjudicación de quiebra de una sociedad en tales condiciones no es legalmente una declaración de quiebra de los socios individualmente. Por consiguiente, no es sostenible la contención de los apelantes respecto a que la declaración de quiebra de Monllor & Cª. y su exoneración en cuanto a sus deudas fué la adjudicación en quiebra y exoneración de sus socios individualmente y que por esto no están obligados a pagar personalmente la reclamación hecha en este pleito.

Con respecto al otro extremo alegado por los recurrentes diremos que si bien es cierto que en la planilla de acreedores presentada por Monllor & Cª. en su quiebra figuró como acreedor Guillermo Pierluisi por la cantidad de $1,500, no fué incluída en ella Hortensia Pierluisi que es la acreedora demandante y cuyo apoderado no era Guillermo Pierluisi sino Simón Pierluisi. Además de esto, aunque el

crédito de Hortensia hubiera sido el que figuró a nombre de Guillermo, siempre resulta que no se ha probado que se hizo constar su residencia ni que fuera notificado o tuviera en realidad conocimiento del procedimiento de quiebra como requieren el párrafo 8 de la sección 7 de la Ley de Quiebras y la sección 17, párrafo 3, de la misma ley, que fueron aplicadas en el caso de *Roig* v. *Barletta,* 28 D.P.R. 605. Con la declaración de Enrique Monllor se trató de probar que el crédito de $1,500 incluído en la quiebra de la sociedad a nombre de Guillermo Pierluisi es el crédito de Hortensia Pierluisi y que su apoderado tuvo conocimiento de la quiebra; pero aun siendo cierto todo lo dicho por el testigo siempre resulta que si la sociedad quedó exonerada de sus deudas para con Hortensia, no sucede lo mismo con sus socios individualmente por no haber sido ellos declarados particularmente en quiebra. Hay de todos modos un hecho último, y es que la deuda que se reclama en este pleito fué reconocida por la sociedad después de la quiebra, pues en cartas del apoderado de la sociedad, Tomás Monllor, a Simón Pierluisi de fecha 19 de enero de 1915, 22 de mayo de 1915 y 18 de marzo de 1916 se le dice lo siguiente:

"Sr. Don Simón Pierluisi. Apreciado amigo: Recibí su atenta y enterado de todos sus pormenores, paso a contestar nuestro asunto. No le habíamos indicado nada porque estábamos pendientes de hacer un arreglo con nuestros acreedores, pero en vista de que no se pudo hacer nada llevamos la casa a la quiebra para que no salieran beneficiados los señores que embargaron. Según lo que usted me dice de la cuenta de su hermana nosotros estamos dispuestos a pagarle a su vencimiento los vales así no nos quede un centavo porque nosotros no podemos permitir que usted quede mal desde el momento en que usted nos sirvió gratuitamente en este asunto. Nosotros seguiremos trabajando en otros negocios. . ."

"Sr. Don Simón Pierluisi. Hacienda Porvenir. Apreciado amigo: En contestación a la suya respecto al dinero de su hermana, no le puedo decir hoy nada hasta el mes que viene que estamos haciendo todo lo posible para darle un pico. . ."

"Sr. Don Simón Pierluisi. Apreciado amigo: Recibí su atenta y en contestación a lo que usted me pregunta debo manifestarle que

los intereses de su hermana no han sido pagados por haber tenido una racha bien mala. Ya yo hablé con Manolo en este asunto y él me dijo que está esperando desenvolverse de los muchos compromisos que hizo en estos meses anteriores, pero el negocio va mejorando mucho y creo que pronto se envíen dichos intereses.''

Ese reconocimiento surtió el efecto de revivir la deuda, aun en contra de la sociedad deudora, habiendo dicho nosotros en el caso de *Piñeiro* v. *Pérez,* 20 D.P.R. 238, que ''la renovación clara y terminante de una deuda por un quebrado después de la declaración de quiebra y antes de haber sido exonerado de su deuda es válida y la deuda es exigible judicialmente.'' En ese caso citamos el de *Zavelo* v. *Reeves,* 227 U. S. 629, en el que se declaró lo siguiente:

''Se alega en cuanto a ambas réplicas que, aunque una deuda extinguida por la exoneración hecha en la quiebra puede ser renovada por una nueva promesa después de tal exoneración, no puede esto verificarse cuando la nueva promesa se hace dentro del período comprendido entre la declaración de quiebra y la exoneración.

''Sin embargo, es una cuestión que ya ha sido resuelta, que si bien la exoneración exime al quebrado de la responsabilidad legal de tener que pagar una deuda susceptible de ser probada (*provable debt*) en la quiebra, la obligación moral en que queda es suficiente para fundar en ella una nueva promesa de pago de dicha deuda. Y de acuerdo con la lógica y la opinión de la mayoría de las autoridades, la fecha de la nueva promesa no es una cuestión esencial. La teoría es que la exoneración anula el remedio pero no la obligación; que, hablando en términos generales, la exoneración hace referencia al comienzo de los procedimientos, y el traspaso de los bienes del quebrado en beneficio de los acreedores es efectivo como si se hubiera hecho al mismo tiempo; que desde la fecha a que se refiere la exoneración queda el quebrado un hombre libre estando tan capacitado para comprometerse a satisfacer una obligación anterior que de otro modo no podría hacerse efectiva por haber quedado exonerado de sus deudas, como para celebrar cualquier nuevo convenio. Así pues, de acuerdo con otras leyes de quiebras se ha resuelto generalmente que la promesa de pagar una deuda susceptible de prueba es tan eficaz, a pesar de la exoneración del que-

brado, cuando se hace después de presentada la solicitud y con anterioridad a dicha exoneración como si se hiciera después de la misma.''

El motivo de error octavo, referente a que antes de procederse contra los socios debió hacerse excusión de los bienes de la sociedad, lo hemos tratado al principio. En el noveno error se dice que no debió declararse con lugar la demanda contra los socios por un pagaré suscrito por la sociedad, contra la cual debió dirigirse la acción aun después de disuelta, por continuar su personalidad en liquidación. Se funda este alegado error en que es insuficiente la alegación de la demanda de que la sociedad fué disuelta y de que carece de bienes, porque disuelta la sociedad por vencimiento de su término o conclusión de su empresa, por la pérdida entera del capital o por la quiebra de la compañía (artículo 221 del Código de Comercio) el resultado no sería la pérdida de la personalidad legal de la compañía, sino su disolución y liquidación, siendo necesaria ésta para que se origine la responsabilidad subsidiaria de los socios. Sin embargo, la demanda no se limitó a alegar lo que los apelantes dicen, sino que en su hecho sexto se expuso que la sociedad Monllor & Cª. ha liquidado sus negocios cesando en sus operaciones mercantiles y que actualmente no existe como tal entidad social. Con esas alegaciones, no puede sostenerse que aparezca de la demanda que la mercantil está en liquidación, y son suficientes esos hechos para demandar directamente a los socios.

La última alegación de que es improcedente la condena en costas también es insostenible en vista de las conclusiones a que llegó la corte inferior, que confirmamos.

*La sentencia recurrida debe ser confirmada, pero modificándola en el sentido de que la condena contra Tomás Monllor sea solamente en cuanto a los bienes conyugales.*