SOCIEDAD DE GANANCIALES compuesta por HIRAM A. CUEVAS y ALBA UMPIERRE APONTE, demandantes y apelados, *v.* REINALDO PANIAGUA DIEZ y SANTURCE CANGREJEROS, INC., demandados y apelantes.

*Número:* AC-95-10 *Resuelto:* 16 de diciembre de 1996

*William Látimer Janer*, abogado de la parte apelante; *Oronte Oliveras Sifre*, abogado de la parte apelada.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

"No existe en nuestra tradición jurídica un concepto unitario del acto de comercio, los factores definitorios de una naturaleza comercial o civil de una transacción varían de caso a caso." *Pescadería Rosas, Inc. v. Lozada*, 116 D.P.R. 474, 479 (1985).

I

El 17 de septiembre de 1976 los esposos Hiram A. Cuevas y Alba Umpierre Aponte vendieron sus acciones en el Santurce Baseball Club, Inc., a la corporación Santurce Cangrejeros, Inc., quien opera la franquicia del equipo de béisbol profesional conocido como los "Cangrejeros de Santurce".

■ · Como parte del precio, Santurce Cangrejeros, Inc. les entregó *dos pagarés a la orden*,([1]) valorados en \$49,500 y \$5,500, respectivamente. Ambos devengaban intereses anuales al 9%, luego de su vencimiento. El primero lo garantizó, como deudor solidario, el Lcdo. Reinaldo Paniagua Diez, y el segundo el Sr. Ángel M. Rivera. Fueron emitidos en favor de Hiram A. Cuevas o a su orden, a vencer el 10 de mayo de 1981. Además, consignaban que estaban sujetos a los términos y a las condiciones del *Contrato de Compraventa de Acciones* otorgado entre las partes.

El 22 de diciembre de 1993 la Sociedad Legal de Gananciales Cuevas–Umpierre presentó en el Tribunal Superior, Sala de San Juan, acción en cobro de dinero contra Paniagua Diez y Santurce Cangrejeros, Inc. Al contestar, los demandados negaron responsabilidad y presentaron como defensa la *prescripción.*

Subsiguientemente, mediante solicitud de sentencia sumaria, los demandados Paniagua Diez y Santurce Cangrejeros, Inc. reiteraron dicha defensa. Invocaron el Art. 946 del Código de Comercio, 10 L.P.R.A. sec. 1908, y estar ambos pagarés expedidos "a la orden" y existir en su favor la presunción controvertible de ser mercantiles. El citado Art. 946 dispone tres (3) años como término para ejercer las acciones procedentes de letras de cambio. Los demandantes Cuevas–Umpierre se opusieron. Acompañaron una declaración jurada del Señor Cuevas en la cual expusieron que *a la fecha de la compraventa, ni su esposa ni él eran comerciantes.*([2])

Este dato no fue controvertido. Aun así el ilustrado tribunal (Hon. Guillermo Arbona Lago, Juez) concluyó que

---

([1]) *El Pagaré a la Orden* se ha definido como una "[p]romesa escrita de pagar cierta cantidad a determinada persona o a su *orden,* en el plazo que se establezca". (Énfasis en el original.) G. Cabanellas, *Diccionario Enciclopédico de Derecho Usual,* 20ma ed., Buenos Aires, Ed. Heliasta, 1981, T. VI, pág. 36.

([2]) Bajo juramento expresó "[q]ue para el 17 de septiembre de 1976 ni mi esposa Alba Umpierre Aponte ni el suscribiente éramos comerciantes". Apéndice VI del Escrito de apelación, pág. 28.

ambos pagarés fueron emitidos a la orden, operaba la presunción de mercantilidad y la compraventa de acciones tenía igual carácter. Determinó, además, que esa presunción no fue rebatida y aplicó el término prescriptivo de tres (3) años.

En apelación, el Tribunal de Circuito de Apelaciones (Hons. Liana Fiol Matta, Dolores Rodríguez de Oronoz y Gilberto Gierbolini Rodríguez), *revocó* bajo el fundamento de que la compraventa era de carácter civil y no había prescrito. Dicho foro señaló, además, que expedir un pagaré a la orden no convertía automáticamente el negocio que lo originaba en un acto de comercio. Como pagaré civil, el plazo prescriptivo era de quince (15) años, según el Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294. No conformes, los demandados Paniagua Diez y Santurce Cangrejeros, Inc. apelaron.[3]

II

En el pasado hemos resuelto que a un pagaré expedido a la orden le acompaña una presunción *juris tantum*, de ser mercantil, a menos que se pruebe que no procede de operaciones comerciales. *Pierluisi v. Monllor*, 42 D.P.R. 7, 16 (1931). No obstante, su expedición a la orden, por sí solo, no es suficiente para definir la naturaleza del pagaré. La presunción se desvanece si se concluye que el pagaré no procede de una operación mercantil. *Cayere v. Buxó*, 62 D.P.R. 910 (1944). De ahí que quien impugne su carácter mercantil tiene el peso de la prueba para derrotar esta presunción y en consecuencia establecer su naturaleza

---

[3] Discuten los errores siguientes:

"1. Erró el Tribunal Apelativo al revocar la sentencia de Instancia al entender que la parte demandada-apelante no cumplió con su carga de alegar la aplicabilidad del Código de Comercio.

"2. Erró el Tribunal Apelativo al revocar la sentencia de Instancia al entender que la compraventa de acciones corporativas de Santurce Baseball Club, Inc. por Santurce Cangrejeros, Inc. no es de naturaleza mercantil y por ende los pagarés objeto de este litigio tampoco lo son." Escrito de apelación pág. 4.

civil. En *San Miguel, Etc. & Cía. v. Guevara,* 64 D.P.R. 966 (1945), reiteramos esta presunción.([4]) Este recurso nos permite pasar juicio sobre ella nuevamente.

Su génesis es producto de un análisis integrado de las disposiciones mercantiles vigentes en España y Puerto Rico a finales del siglo pasado. Entender su alcance requiere examinar los Arts. 443, 532([5]) y 950 del entonces Código de Comercio para la Península y las Antillas de 1886, con sus respectivos equivalentes del Código de Comercio español de 1885.

En lo pertinente disponían:

Art. 443:
La *letra de cambio* se reputará acto mercantil, y todos los derechos y acciones que de ella se originen, sin distinción de personas, se regulan por las disposiciones de este Código.
Art. 532:
Las libranzas a la orden entre comerciantes; y los vales o *pagarés también a la orden, que procedan de operaciones de comercio, producirán las mismas obligaciones y efectos que las*

---

([4]) Al discutir el origen de esta presunción, expresamos:

"...Desde el año 1906, en el caso de *Hernández v. Muñiz,* 10 D.P.R. 17, 20, este Tribunal adoptó la doctrina expuesta en la Sentencia del Tribunal Supremo de España, de 25 de enero de 1898, *Silvestre Ayoldi v. Banco de España,* 83 Jurisprudencia Civil 160, estableciendo que:

'...la expedición de pagarés a la orden y sus endosos deben reputarse actos mercantiles, con arreglo al art. 2o. del Código de Comercio, por ser de los expresamente definidos en este cuerpo legal, y por lo tanto, hay la presunción de que proceden de operaciones de comercio, salvo prueba en contrario.'

"Se ratificó la doctrina en *Salgado v. Villamil et al.,* 14 D.P.R. 449, 457 (1908) y *Rosaly v. Alvarado,* 17 D.P.R. 109, 111 (1911); y aunque en *J. Ochoa y Hermano v. Herederos de Lanza,* 17 D.P.R. 420 se afirmó que los pagarés a la orden son documentos mercantiles, tal decisión se aclaró en *Vázquez v. Laíno,* 23 D.P.R. 235 (1915) donde se reiteró la existencia de la presunción *juris tantum* en cuanto al carácter mercantil de tales documentos. Posteriormente la doctrina ha sido ratificada hasta el día de hoy en las decisiones de *Román v. Martínez,* 25 D.P.R. 654; *Fernández v. Ruiz Soler et al.,* 27 D.P.R. 80, 83; *Barros v. Padial,* 35 D.P.R. 258; *Catoni v. Martorell Vda. de Prado,* supra; *Totti v. Fernández,* 40 D.P.R. 636; *Pierluisi v. Monllor,* 42 D.P.R. 7; *Sucn. Franceschi v. González,* 42 D.P.R. 939, 947; *Blondet v. Garau,* 47 D.P.R. 863; *Barceló & Co., S. en C., v. Olmo,* 48 D.P.R. 247, 249; *Banco de P.R., Liquidador, etc. v. Rodríguez,* 53 D.P.R. 174, y *Cayere v. Buxó,* 62 D.P.R. 910." (Énfasis en el original.) *San Miguel, Etc. & Cía. v. Guevara,* 64 D.P.R. 966, 970–971, esc. 3 (1945).

([5]) Los Arts. 443 y 532 del Código de Comercio de 1886 fueron posteriormente derogados por la Ley Núm. 17 de 22 de abril de 1930, conocida como la Ley Uniforme de Instrumentos Negociables. El entonces Art. 950 es idéntico al Art. 946 del Código de Comercio vigente, 10 L.P.R.A. sec. 1908.

*letras de cambio*, excepto en la aceptación, que es privativa de éstas. Los vales o pagarés que no estén expedidos a la orden, se reputarán simples promesas de pago, sujetas al derecho común o al mercantil, según su naturaleza, salvo lo dispuesto en el título siguiente. (Énfasis suplido.)

Art. 950:

*Las acciones procedentes de letras de cambio se extinguirán a los tres años de su vencimiento, háyanse o no protestado.*

Igual regla aplicará a las libranzas y pagarés de comercio, cheques, talones y demás documentos de giro o cambio, y a los cupones e importe de amortización de obligaciones emitidas conforme a este Código.

La lectura integral de estos preceptos nos permiten las observaciones siguientes. De entrada, surge que a pesar del código equiparar los pagarés a la orden que proceden de operaciones mercantiles con las letras de cambio, no define éstas últimas.[6] Sin embargo, es un dato aceptado que históricamente el elemento indispensable para conferir al pagaré a la orden la misma eficacia y los efectos que las letras de cambio era su procedencia de operaciones de

---

[6] El Código de Comercio español de 1885 no definía las letras de cambio. En su trasfondo histórico, las "letras" se originaron como parte de las necesidades del Comercio a fines del Siglo XIV. Mediante las letras se ejecutaban los contratos de cambio por los cuales una parte se comprometía a pagar una suma de dinero específica en una plaza determinada, en tanto que la otra se comprometía a proporcionarle el equivalente en otra plaza distinta. En fin, su finalidad era comprobar una deuda monetaria entre dos (2) personas. Véase R. Gay de Montellá, *Código de Comercio*, Barcelona, Ed. Bosch, T. III, 1948, pág. 450.

Por mucho tiempo la letra de cambio cumplió la única función de comprobar una deuda entre el librador y el aceptante. No fue hasta el Siglo XVII que se reconoce la facultad de ser expedida a la orden, permitiendo de esta forma un tráfico más ágil y de fácil circulación. Así, pues, cesa la exclusividad que hasta entonces existía del pago en favor del tomador, permitiendo ello, a éste, que el importe sea pagado a un tercero. De esa forma la letra de cambio se separó del antiguo concepto del contrato de cambio para traducirse en moneda fiduciaria, papel moneda de más circulación en el mundo de los negocios. Gay de Montellá, *op. cit.*, pág. 456.

En su significado contemporáneo, la *letra de cambio* se define como un "[t]ítulo de crédito, revestido de los requisitos legales, en virtud del cual una persona, llamada *librador*, ordena a otra, llamada *librado*, que pague a un tercero, el *tomador*, una suma determinada de dinero, en el tiempo que se indique o a su presentación". (Énfasis en el original.) Caballenas, *op cit.*, T. V, pág. 131. Además, se ha definido como "una orden incondicional, por escrito, dirigida por una persona a otra, firmada por la persona que la libra, requiriendo a aquella a quien va dirigida que pague, a la vista, o a fecha fija o futura determinable, cierta cantidad de dinero, a la orden o al portador". I. Rivera García, *Diccionario de Términos Jurídicos*, Ed. Equity, 1989, pág. 152.

comercio. Así lo interpretó el Tribunal Supremo español en sus Sentencias de 10 de marzo de 1894, 24 de noviembre de 1894, 11 de octubre de 1918, 8 de abril de 1926 y 21 de febrero de 1928. M. Rodríguez Navarro, *Doctrina mercantil del Tribunal Supremo*, Madrid, M. Aguilar, 1948, T. II, págs. 2568–2572; A. Polo Diez, *Leyes mercantiles y económicas*, Madrid, Ed. Rev. Der. Privado, 1956, T. II, págs. 1949–1958.

Cuando este Tribunal, a principios de siglo, adoptó la presunción invocó la Sentencia del Tribunal Supremo español de 25 de enero de 1898 en el caso de *Silvestre Ayoldi v. Banco de España*, 83 Jurisprudencia Civil 160. La determinación final sobre la naturaleza mercantil de un pagaré expedido a la orden dependerá de que concurran los requisitos siguientes: la expedición de un pagaré a la orden; que dicho pagaré posteriormente sea endosado, y que proceda de una operación mercantil. De conformidad con el entonces Art. 532 del Código de Comercio, *supra*, este último elemento era crucial y decisivo para conferirle condición de ser mercantil y, en consecuencia, sujetarlo a las disposiciones del Código de Comercio.

Lorenzo Benito, en su reputada obra *Manual de Derecho Mercantil*, Madrid, Victoriano Suárez, 1924, pág. 743, resume esta dinámica así: "Si este pagaré se extiende a la orden, es susceptible de endoso; y si ha sido resultado de una operación mercantil, será mercantil el documento, o, mejor dicho cambiario, según el criterio de nuestro Código, siéndole aplicable, en este caso, a tenor de lo prevenido en el art. 532, todo lo que queda dicho respecto a las letras de cambio." Valga aclarar que respecto de los pagarés al portador, según este autor, no existe duda de que siempre son mercantiles. Benito, *op. cit.*, pág. 746.

Con vista a estos antecedentes, reiteramos que "[p]ara que el pagaré o el vale a la orden sean documentos mercantiles, han de proceder de operaciones de comercio sin que se precise que sean comerciantes los que en estas

operaciones intervienen". J. Garrigues, *Curso de Derecho Mercantil*, Bogotá, Ed. Temis, 1987, T. III, pág. 112. Véanse: R. Uría, *Derecho Mercantil*, 10ma ed., Madrid, Imprenta Aguirre, 1975, pág. 782; J. González de Echávarri, *Comentarios al Código de Comercio y jurisprudencia española*, 3ra ed., Valladolid, Casa Marín, 1945, T. IV, pág. 170.

> El carácter comercial de estos documentos deriva exclusivamente de la *objetividad de las operaciones que le han dado origen*. Si éstas resultan de actividades mercantiles ... entonces la comerciabilidad de la operación se sobrepone al carácter subjetivo de los contratantes y por ello el documento cae bajo el imperio del Código de Comercio .... No procediendo el crédito consignado en el ... pagaré a la orden, de operaciones mercantiles ... será considerado dicho documento como expresión de la obligación civil, de devolver la cantidad prestada al tipo de cambio y en la fecha convenida ...." (Énfasis suplido.) R. Gay de Montellá, *Código de Comercio español comentado: legislación, jurisprudencia y derecho comparado*, Barcelona, Ed. Bosch, 1948, T. III, Vol. II, pág. 668.

▆▆▆ Como corolario es menester examinar el negocio que dio génesis a la expedición de los pagarés para determinar si constituyó un acto de comercio. En esa tarea recordamos que nuestro Código de Comercio adopta la teoría objetiva que propone que "el derecho mercantil pasa a ser más bien el derecho propio de una clase de actos, los actos de comercio, los cuales no son únicamente los realizados por los comerciantes en su carácter de tales". *Pescadería Rosas, Inc. v. Lozada*, supra, pág. 478. En otras palabras, habrá que examinar el acto en sí para determinar la aplicabilidad del Código de Comercio y tener presente que "[l]os factores definitorios de la naturaleza, comercial o civil, de una transacción varían de caso a caso". Íd., pág. 479. Finalmente, no podemos pasar por alto la norma de que "[q]uien invoque el Código de Comercio tiene la carga de la prueba sobre su aplicabilidad". Íd., pág. 481. Elaboremos.

## III

No existe controversia sobre la expedición a la orden de los pagarés. Ambos permanecieron en poder de los esposos Cuevas-Umpierre sin ser endosados en favor de terceros.

La contención de los demandados Paniagua Diez y Santurce Cangrejeros, Inc., de que la venta de acciones por los esposos Cuevas-Umpierre debe reputarse mercantil, descansa en varios supuestos. *Primero,* que Santurce Cangrejeros, Inc., como corporación, realiza múltiples negocios relacionados con la presentación de un "espectáculo deportivo". Esto incluye desde la promoción por los medios de comunicación hasta el alquiler de la concesión sobre los servicios de cafetería y la venta de emblemas y recordatorios (*souvenirs*). *Segundo,* que opera una franquicia de béisbol con fines lucrativos. Y *tercero,* que el elemento de reventa de las acciones —esencial para configurar la compraventa mercantil— está presente toda vez que "se compraron para revenderlas de otra forma, la forma de un espectáculo de béisbol profesional". Escrito de apelación, pág. 13. *No nos convencen.*

Adoptar esta tesis conllevaría sostener que el elemento de reventa en una compraventa mercantil se configura *aún cuando el objeto principal del negocio no se destinó a la reventa,* y sí porque meramente éste produce ciertos dividendos. Admitirla sería destruir el concepto de compraventa mercantil.

 Poseer las características de comerciante por sí solo no es determinante para aplicar las disposiciones del Código de Comercio. Art. 2 del Código de Comercio, 10 L.P.R.A. sec. 1002; J. Garrigues, *Tratado de Derecho Mercantil,* Madrid, Rev. Der. Mercantil, 1963, págs. 177–178; *Reece Corp. v. Ariela, Inc.,* 122 D.P.R. 270, 280 (1988). El contrato de compraventa mercantil se define como "la compraventa de cosas muebles para revenderlas, bien en la

misma forma que se compraron, o bien en otra diferente, con ánimo de lucrarse en la reventa". Art. 243 del Código de Comercio, 10 L.P.R.A. sec. 1701.

 El "elemento que distingue principalmente la compraventa mercantil de la civil, [es] 'el doble propósito [del comprador] de revender ulteriormente las cosas compradas y de obtener un lucro' ". *Ramallo Brothers Printing, Inc. v. Ramis*, 133 D.P.R. 436, 440 (1993). Véase Art. 243 del Código de Comercio, 10 L.P.R.A. sec. 1701. "Al faltar esa intención o propósito, la compraventa carece del carácter mercantil que la distingue del tráfico civil." *Reece Corp. v. Ariela, Inc.*, supra, pág. 277. Véase Uría, *op. cit.*, pág. 474. La interposición lucrativa se realiza a través de los contratos de compraventa en los cuales una misma persona ocupa la posición de comprador en el primero y la de vendedor en el segundo. Y son dos actos o facetas de una misma operación económica inseparables por la intención especulativa que los une e identidad del objeto sobre el cual recaen. Garrigues, *Tratado de Derecho Mercantil, op. cit.*, T. III, Vol. 1, pág. 238.

 El término *revender*, en su acepción más elemental, se define como "[v]olver a vender lo que se ha comprado con ese intento ...". *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. II, pág. 1186. Su empleo en el Código de Comercio no equivale a calificar como *reventa* cualquier beneficio, rendimiento o dividendo que toda actividad genere. *La relación remota entre la adquisición de unas acciones, la explotación comercial de la franquicia y que éstas sirvan como base para otros negocios, no puede constituir el elemento decisivo para clasificar el negocio original como uno mercantil.*

 Según expuesto, la presunción de mercantilidad de un pagaré a la orden exige que procedan de una operación de comercio. La prueba revela que el objeto de la com-

praventa —las acciones adquiridas mediante compraventa— no fueron destinadas a la reventa. Tampoco surge que esa fuera la intención de Santurce Cangrejeros, Inc. al momento de su adquisición. Un examen *objetivo* de las circunstancias presentes nos mueve persuasivamente a concluir que el negocio fue civil, no mercantil. En ese escenario es lógico concluir que las acciones fueron compradas para uso exclusivo y provecho de su adquirente, *no la reventa con ánimo de lucro*. No podemos calificar ese negocio mercantil. La prueba aportada derrotó la susodicha presunción. La acción no está prescrita.

*Se confirmará la Sentencia del Tribunal de Circuito de Apelaciones y se devolverán los autos al tribunal de instancia para la continuación de los procedimientos.*

Los Jueces Asociados Señores Rebollo López y Corrada Del Río no intervinieron. La Juez Asociada Señora Naveira de Rodón no intervino.