*47 TEXTO COMPLETO DE LA SENTENCIA
Mediante recurso de revisión judicial instado el 3 de septiembre de 2005, comparece el Dr. Raúl Zambrana García (en lo sucesivo, el recurrente). Nos solicita que revisemos la Resolución fechada el 1 de marzo de 2004 por la Junta de Apelaciones del Sistema de Administración de Personal (JASAP). La referida Resolución fue notificada y archivada en autos el 30 de junio de 2004. Por razón de la misma, JASAP declaró No Ha Lugar la apelación presentada por el recurrente impugnando la cesantía sufrida por éste.
Analizados los escritos presentados por las partes, y a la luz del derecho aplicable, resolvemos revocar la Resolución recurrida.
I
Desde el año de 1978, el recurrente se desempeñó como empleado de carrera para el Departamento de Salud. Su clasificación es D-3290, Médico Permanente. El 30 de mayo de 2000 recibió una comunicación escrita, suscrita por la Dra. Carmen Feliciano de Melecio, entonces Secretaria del Departamento de Salud y Directora Ejecutiva de AFASS, notificándole su cesantía de su puesto en el Hospital Regional de Ponce, efectivo el 30 de junio de 2000. La razón consignada en la misiva para la cesantía fue la venta y/o contrato de arrendamiento, administración y operación de dicha institución hospitalaria a la Corporación de Servicios de Salud Episcopales, Inc. Además, en la carta de cesantía, el recurrente fue informado de su derecho a apelar ante JASAP la determinación del Departamento de Salud y del término correspondiente para ello.
El recurrente impugnó la decisión de la Secretaria de Salud ante JASAP el 29 de junio de 2000. Luego de varios trámites procesales, el 5 de marzo de 2000, JASAP emitió resolución ordenando a la parte apelante-recurrente a que en veinte (20) días fundamentase sus alegaciones y expusiera de qué manera se le habían violado los derechos provistos en la Ley de Personal del Servicio Público, su reglamentación o la implantación del plan de cesantías. El 25 de marzo de 2002, el recurrente presentó un “Escrito en Cumplimiento de Orden”. Alegó que no debió ser cesanteado, sino reubicado en cualquier otra facilidad del Departamento de Salud, amparándose en la Sección 8.4, inciso b(l) del Reglamento de Personal para los Empleados en el Servicio de Carrera y de Confianza de la Administración de Servicios Médicos de Puerto Rico. 
De conformidad con el Artículo 3.5 de su Reglamento Procesal y mediante orden fechada 19 de septiembre de 2002, notificada el 20 de septiembre de 2002, JASAP ordenó la consolidación del caso del recurrente con otros casos de cesantías relacionadas a la Reforma de Salud, bajo el epígrafe de Maggie Acevedo Segarra y otros 146, caso núm. CES-00-06-1639. A su vez, JASAP notificó la celebración el 18 de marzo de 2003 de una Vista sobre el Estado de los Procedimientos y de vistas públicas los días 8, 9 y 10 de abril de 2003. No obstante, las vistas no se celebraron.
El 8 de abril de 2003, el recurrente radicó ante JASAP una “Solicitud de Anotación de Rebeldía”. Argumentó en la misma que el Departamento de Salud no había contestado la apelación, solicitando además, que se dictase resolución declarando con lugar su apelación.
El 1 de julio de 2003, en Vista Sobre el Estado de los Procedimientos, JASAP dispuso que las partes tendrían hasta el 15 de agosto de 2003 para someter memorandos de derechos en apoyo de sus respectivas posiciones en relación a la legalidad de las cesantías de empleados de AFASS. Sin embargo, el recurrente no *48 fue notificado de la celebración de dicha vista y tampoco fue notificado de los memorandos que sometieron las partes.
Finalmente, en Resolución fechada 1 de marzo de 2004 y notificada el 30 de junio de 2004, JASAP declaró No Ha Lugar la apelación del recurrente al concluir que el Plan de Cesantías del Departamento de Salud se había llevado a cabo de conformidad a la nueva política pública relacionada a la Reforma de Salud. El recurrente solicitó Reconsideración el 20 de julio de 2004. Dicha solicitud se entendió rechazada de plano al JASAP no expresarse en torno a la misma en el plazo de quince (15) días dispuesto para ello en la Sección 3.15 de la Ley 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. §2165 (en lo sucesivo, LPAU).
Oportunamente, acude el recurrente ante este foro apelativo el 26 de agosto de 2004 y aduce la comisión de los siguientes errores:
1. “Erró JASAP al violar el derecho propietario del apelante-recurrente Dr. Zambrana sin el debido proceso de ley. ”

2. “Erró JASAP al no resolver que el Dr. Zambrana le asiste la razón en su apelación. ”

Expuesta hasta aquí la situación fáctica y procesal pertinente, procedemos a exponer la doctrina aplicable a la situación de autos.
II
-A-
E1 derecho al debido proceso de ley emana tanto de la Constitución del Estado Libre Asociado de Puerto Rico como de la Constitución de los Estados Unidos de América. Véase, Sección 7 del Artículo II de la Constitución de Puerto Rico, Const. E.E.U.U., enmiendas 5 y 14. La Sección 7 de nuestra Constitución establece que "[njinguna persona será privada de su libertad o propiedad sin debido proceso de ley”. El debido proceso de ley recoge la esencia de nuestro sistema de justicia. “Es herencia de nuestros antepasados, fruto de nuestro esfuerzo colectivo y nuestra vocación democrática de pueblo. ’’ Amy v. Adm. Deporte Hípico, 116 D.P.R. 414, 420 (1984). Véase además: López y otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 98, 113 (1996). Se manifiesta en dos vertientes distintas: la sustantiva y la procesal. Álvarez Elvira v. Arias Ferrer, 156 D.P.R. _, 2002 J.T.S. 37, a la pág. 825; Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562, 578 (1992); Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 273 (1987). En su vertiente procesal “toma en cuenta las garantías procesales mínimas que el Estado debe proveerle a un individuo al afectarle su vida, propiedad o libertad”. Rivera Santiago v. Srio. de Hacienda, supra. Para cumplir con el debido proceso de ley, en su dimensión procesal, la jurisprudencia ha establecido varios requisitos. Los mismos, deben ser satisfechos en todo procedimiento de índole adversativo; son éstos a saber: a) notificación adecuada del proceso; b) proceso ante un juzgador imparcial; c) oportunidad de ser oído; d) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; e) tener asistencia de abogado, y f) que la decisión se base en el expediente del caso. López Santos v. Asociación de Taxis de Cayey, supra; Feliciano Figueroa v. Tosté Piñero, 134 D.P.R. 909 (1993).
En el ámbito del derecho administrativo, aunque el debido proceso de ley no tiene la rigidez que se le reconoce en la esfera penal, sí se requiere un proceso justo y equitativo que respete la dignidad de los individuos afectados. López Santos v. Asoc. de Taxis de Cayey, supra; López Vives v. Policía de Puerto Rico, 118 D.P.R. 219 (1987). “...Después de todo, el debido proceso de ley encarna la esencia de nuestro sistema de justicia. Su prédica comprende los elevados principios y valores que reflejan nuestra vida en sociedad y el grado de civilización alcanzado.... ”. López Santos v. Asoc. de Taxis de Cayey, supra, a la pág. 113. En nuestra jurisdicción se ha reconocido que un empleado goza respecto a su empleo y fuente de ingreso, de una *49 protección al amparo de la cláusula del debido proceso de ley de la Constitución del Estado Libre Asociado de Puerto Rico y de la Constitución de Estados Unidos de América. Torres Solano v. P.R.T.C., 127 D.P.R. 499 (1990).
Habida cuenta de ello, la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A § 2101 et seq. (L.P.A.U.), dispone que para adjudicar formalmente una controversia es indispensable garantizar los derechos a notificación oportuna de los reclamos en contra de una parte, a presentar evidencia, a una adjudicación imparcial y a que la decisión esté basada en el expediente. 3 L.P.R.A. §2151. La sección 4.1 de la L.P.A.U., supra, a la § 2171, permite que se solicite al Tribunal de Apelaciones la revisión de decisiones administrativas. Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones administrativas en vista de la vasta experiencia y conocimiento especializado de la agencia. Socorro Rebollo v. Yiyi Motors, 2004 J.T.S. 4, a la pág. 501; Pacheco Torres v. Estancias de Yauco, S.E., 2003 J.T.S. 150, a la pág. 210; T. Tac, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1999); Agosto v. Fondo del Seguro del Estado, 132 D.P.R. 866, 879 (1993). Por lo tanto, la persona que alegue lo contrario tendrá que presentar evidencia suficiente para derrotar tal presunción, no pudiendo descansar únicamente en meras alegaciones. Pacheco Torres v. Estancias de Yauco, S.E., supra, a las págs. 210-211.
La revisión judicial es limitada. Sólo determina si la actuación administrativa fue una razonable y cónsona con el propósito legislativo o si por el contrario fue irrazonable, ilegal o medió abuso de discreción. Mun. de San Juan v. J.C.A., 149 D.P.R. 263 (1999); T-JAC, Inc. v. Caguas Centrum Limited Partnerhip, S.E., supra, a la pág. 80; Com. Vec. Pro-Mej., Inc. v. J. P., 147 D.P.R. 750 (1999); Fuertes y otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993). Las cuestiones de derecho, contrario a las de hechos, que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia, son revisables en toda su extensión. Véase: Pacheco Torres v. Estancias de Yauco, S.E., supra, a la pág. 211; San Antonio Maritime v. Puerto Rican Cement, 2001 J.T.S. 20, pág. 860; T. Jac, Inc. v. Caguas Centrum Limited, supra.
La Sección 4.5 de la L.P.A.U., 3 L.P.R.A. §2175, establece que “[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo”. Véase: Misión Ind. P.R. v. J.P., supra, a la pág. 131; Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995). Las decisiones administrativas tienen a su favor la presunción de legalidad y corrección. Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692 (1975), a la pág. 699. Dicha presunción “debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla”. Rivera Concepción v. ARPE, 152 D.P.R. _ (2000), 2000 J.T.S. 155, a la pág. 160; Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1987). Es decir, la Sección 4.5 de L.PA.U., supra, recoge estatutariamente la norma jurisprudencial que establece que-, de-ordinario, los tribunales no deben intervenir con las determinaciones de hechos de un organismo administrativo si éstas se apoyan en prueba suficiente que surja del expediente considerado en su totalidad. Misión Ind. P.R. v. J.P., supra; Metropolitana S.E. v. A.R.P.E., supra; Fac. C. Soc. Aplicadas Inc. v. C.E.S., 133 D.P.R. 521, 532-533 (1993).
El concepto de evidencia sustancial ha sido definido como “aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión”. Misión Ind. P.R. v. J.P., supra; Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953). Por ello, la paite afectada por una determinación de hecho de una agencia, debe, en primer lugar, “demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda conchar que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración”. Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905 (1999); Misión Ind. P.R. v. J.P., supra. Si la parte afectada no demuestra la existencia de otra prueba, las determinaciones de hechos de una agencia deben ser sostenidas por el tribunal revisor. Ramírez Rivera v. Depto. de Salud, supra. Ello persigue evitar que los tribunales sustituyan el criterio de la agencia por el suyo propio.
*50 Nuestro Tribunal Supremo ha indicado que las funciones adjudicativas de JASAP deben atemperarse a las disposiciones de la Ley de Procedimiento Administrativo Uniforme. Torres Ramos v. Policía de P.R., 143 D.P. R. _ (1997), 97 J.T.S. 112, a la pág. 1371. En virtud de la Sección 7.18 de la Ley Núm. 5 de 14 de octubre de 1975, conocida como Ley de Personal del Servicio Público, 3 L.P.R.A. §1398, y de la Sección 1.6 de la LPAU, 3 L.P.R.A. §2105, el Reglamento Procesal de la J.A.S.A.P. Número 5370 (Reglamento de J.A.S.A.P.), aprobado el 30 de enero de 1996, permite que, una vez reciba una apelación, J.A.S.A.P. puede hacer una de tres cosas: (a) ordenar una investigación; (b) desestimar o archival- por frivolidad, incumplimiento, abandono o prematuridad; o (c) señalar el caso para vista pública. Artículo 7.15 de la Ley Núm. 5, 3 L.P.R.A. see. 1395. En cuanto a la celebración de vistas públicas, el Reglamento de J.A.S.A.P. prescribe, en lo pertinente, lo siguiente: “a) En aquellas instancias donde exista controversia sobre hechos esenciales, la Junta ordenara [sic] la celebración de una vista pública con citación de las partes”. Id., Art. 1.8.
-B-
En sus orígenes, la estructura normativa en la cual descansó el proceso de privatización del sistema de salud pública, fue articulada —en esencia- — • mediante la Ley Núm. 190 de 5 de noviembre de 1996, 24 L.P.R.A. see. 3301 et seq. (la “Ley Núm. 190”). La referida pieza legislativa se promulgó con el fin de permitir al Gobierno: “(a) bandonar su función tradicional de proveedor de servicios, sobre todo para el sector médico-indigente de la población, para convertirse en agente fiscalizador, evaluador y regulador de los sistemas de salud... Proveyó para la transferencia de las instalaciones de salud a intereses privados, a fines de que: “operen como una empresa privada, sujeto a las leyes del mercado.” Véase, Exposición de Motivos, 1996 L.P.R., pág. 1079.
Sin embargo, a escasos meses de su implantación, la Ley Núm. 190, supra, observó considerables enmiendas por conducto de la Ley Núm. 31 de 6 de julio de 1997. Dichas enmiendas respondieron a los fines de “(f)acilitar y flexibilizar el proceso de privatización de las entidades de salud... ”. Véase, Informe sobre el P. de la C. 691 suscrito por las Comisiones de Gobierno y Salud de la Cámara de Representantes, a la pág. 18. Así, la protección laboral a ser concedida a los trabajadores públicos bajo la nueva estructura estatutaria fue recogida por el renovado Art. 19 de la Ley Núm. 190, supra. En relación al devenir de éstos, dispone el referido precepto lo siguiente:

“[...] En cuanto a los empleados regulares del Departamento que laboren en la instalación o instalaciones al momento de tal privatización, y que no pasen a ser empleados de la entidad contratante, el Departamento velará por el cumplimiento de las disposiciones de la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, y las otras leyes y reglamentos aplicables. La entidad contratante no incurrirá en responsabilidad alguna con aquellos empleados del Departamento que no emplee.

La Oficina de Gerencia y Presupuesto y la Oficina Central de Asesoramiento Laboral y de Administración de Recursos Humanos y el Departamento del Trabajo y Recursos Humanos serán partícipes, junto al Secretario [de Salud], de la coordinación necesaria a los efectos del proceso de reubicación y cesantías. Se creará un registro especial en dichas agencias para conceder preferencia a los empleados que no sean transferidos a las empresas adquirientes para su reubicación a través de los diferentes organismos gubernamentales y en la empresa privada. Este registro especial tendrá vigencia hasta el 8 de mayo de 2000.

Para lograr este propósito, el Secretario, en unión con la Oficina de Gerencia y Presupuesto, nombrará un Coordinador de Reubicación. Este funcionario establecerá las normas para el referimiento y selección de los candidatos a los diferentes organismos gubernamentales. También coordinará con la Administración de Fomento Comercial la extensión de los beneficios del Programa Vale Empleo y Vale Empleo Plus de forma preferencial a todos los empleados que no sean transferidos a las empresas adquirientes. El Departamento del Trabajo dará prioridad a los empleados cuyos nombres aparecen en dicho registro, en sus programas de empleo, reempleo y adiestramiento, tales como adiestramientos profesionales por la Administración del Derecho al Trabajo y los del Negociado de Fomento al Trabajo. ” 24 L.P.R.A. §3318.
*51 De otro lado, la Ley Núm. 187 de 7 de agosto de 1998 derogó la Ley Núm. 26 de 13 de noviembre de 1975, la cual creó a AFASS. Así pues, la Ley Núm. 187, reza a continuación:

“Artículo 1- Se deroga la Ley Núm. 26 de 13 de noviembre de 1975, según enmendada, efectivo a los treinta (30) días calendario siguientes a la fecha de la disolución de la Administración de Facilidades y Servicios de Salud de Puerto Rico (AFASS), lo cual deberá ocurrir en o antes del 30 de junio de 1999.

Artículo 2.- Se faculta al Secretario del Departamento de Salud para que, conjuntamente con la Oficina de Gerencia y Presupuesto (OGP), y con la aprobación del Gobernador de Puerto Rico, lleve a cabo los cambios organizacionales internos en su Departamento, conducentes a la consolidación de las facultades y obligaciones adscritas a la Administración de Facilidades de Servicios de Salud (AFASS). Para ello, podrá consolidar, modificar, abolir o suprimir programas, planes y proyectos, al igual que unidades organizacionales existentes, así como crear nuevas; pero todo ello sujeto a que no se afecte o elimine ningún programa establecido por ley, sin el consentimiento de la Asamblea Legislativa.

Artículo 3.- Se faculta al Secretario del Departamento de Salud a recibir y AFASS a transferir personal, récords, documentos, archivos, equipo, materiales, fondos disponibles y el uso de las facilidades de salud, que estén siendo o puedan ser utilizadas en la prestación de servicios médico-hospitalarios, así como cualesquiera otras facultades de AFASS; para ser adscritas a la directa jurisdicción del Departamento de Salud.

[....]".
Por su parte, la Ley Núm 5 de 6 de abril de 1993, conocida como “Ley de Reorganización Ejecutiva de 1993”, 3 L.P.R.A. 1551 nt., establece establece en su Artículo 6 lo siguiente:
“(n)ingún plan de reorganización dispondrá, y ningún plan de reorganización adoptada bajo esta ley podrá tener el efecto de...(afectar el empleo, derechos y permanencia de los empleados de la agencia o agencias reorganizadas, incluyendo los derechos dentro del sistema de pensión, retiro o ahorros. ” 3 L.P.R.A. §139.
Mientras que la Sección 4.6 de la Ley de Personal del Servicio Público, supra, dispone en lo pertinente:
“§ 1336. Disposiciones — Retención

(1) Se proveerá seguridad en el empleo a aquellos empleados de carrera que satisfagan los criterios de productividad, eficiencia, orden y disciplina que deben prevalecer en el servicio público.

(2) Será responsabilidad de la Administración Central y de los Administradores Individuales establecer los referidos criterios a base, entre otros factores, de las funciones de los puestos y las disposiciones de la see. 1371 de este título, y los mecanismos necesarios para proteger a los empleados contra despidos y otras separaciones arbitrarias [...]

(3) [...]

(4) [...]

(5) [...]

(6) Se podrán decretar cesantías en el servicio sin que esto se entienda como destitución, en los siguientes casos:

*52
(a) Debido a la eliminación de puestos por falta de trabajo o de fondos, o

(b) [...] En la situación descrita en la cláusula (a) de este inciso, la separación del servicio se hará según se establezca mediante reglamento al respecto en el que se tome en consideración, entre otros factores, el status de los empleados y su antigüedad y el tiempo en servicio.

(c) [...]

(7) Se podrá separar de su puesto a un empleado de carrera durante el período probatorio cuando se considere que sus servicios, hábitos o actitudes, no justifican concederle status de empleado regular. Si por razón de sus servicios, y no por hábitos o actitudes, el empleado fuere separado de su puesto durante el período probatorio o al final del mismo, y hubiere servido inmediatamente antes de su nombramiento como empleado regular en otro puesto, tendrá derecho a que se le reinstale en un puesto en la misma clase, o en una clase similar, del que ocupaba con status regular, conforme se establezca mediante reglamento.

(8) [...]

(9) Se podrá separar del servicio a cualquier empleado transitorio en cualquier momento dentro del término de su nombramiento. [■■■■]”■ 3 L.P.R.A. see. 1336.
A esos efectos, el Reglamento Núm. 2186, conocido como Reglamento de Personal-Áreas Esenciales al Principio de Mérito, dispone en la sección 9.3 relativa a las cesantías en el servicio público, lo siguiente:

“Se podrá separar del servicio a cualquier empleado, sin que esto se entienda como destitución:

Debido a la eliminación de puestos por falta de trabajo o fondos, en cuyo caso las autoridades nominadoras procederán de la siguiente manera:

Cada autoridad nominadora establecerá un método a los efectos de decretar cesantías en caso de éstas ser necesarias, el cual podrá ser revisado al inicio de cada año fiscal. Como parte de dicho método se podrá subdividir la agencia por programas, unidades, oficinas regionales u oficinas locales a los fines de identificar las jurisdicciones en las cuales habrán de decretarse las cesantías. El método que se adopte se pondrá en conocimiento de los empleados.

Serán separados, en primer término, los empleados transitorios que presten servicios en dicha agencia; en segundo lugar, serán separados los empleados probatorios; y en último término, serán separados los empleados regulares. Se decretarán las cesantías dentro de los grupos de empleados cuyos puestos tengan el mismo título de clasificación. A los efectos de este inciso, los empleados probatorios que inmediatamente antes de adquirir ese status hubieren sido empleados regulares, se considerarán como empleados regulares. ”

Para determinar el orden de prelación en que se decretarán las cesantías dentro de cada uno de los grupos de empleados enumerados en el inciso (b) que precede, la autoridad nominadora se ajustará a las siguientes normas:

a) Se tomará en consideración el desempeño de las funciones, de manera que queden cesantes, en primer término los empleados menos eficientes.

b) En casos de igualdad de eficiencia, se tomará en consideración el tiempo en el servicio de manera que queden cesantes los empleados con menos tiempo en el servicio.

*53
c)A falta de información válida para determinar el desempeño de las funciones, el factor determinante será el tiempo en el servicio, de manera que la persona de más reciente nombramiento en el servicio será la primera en cesar.

d) A los fines de determinar la antigüedad, se considerará todo servicio prestado en puestos, tal como se define en este Reglamento.

e) La autoridad nominadora notificará por escrito a todo empleado a quien haya de cesantear con no menos de treinta (30) días de antelación a la fecha en que habrá de quedar cesante. En dicha notificación se informará, además, al empleado de su derecho de apelación ante la Junta.

f) Ninguna cesantía de empleados será efectiva a menos que se cumpla con el requisito de notificación en la forma aquí establecida [....]”.

Expuesto hasta aquí el derecho aplicable y contando con las comparecencias de las partes, estamos en posición de resolver la controversia presentada. Así lo hacemos.
III
En esencia, el recurrente aduce que la Resolución de JASAP violenta su derecho al debido proceso de ley porque fue privado de una vista ante dicho organismo, no se le notificó la Contestación del Departamento de Salud a su Querella, ni se le notificó la vista de 1 de julio de 2003. Tampoco se le notificaron los memorandos en apoyo a las respectivas posiciones de las partes. Tiene razón, veamos porqué.
El Artículo 1.2(c) faculta a JASAP a “emitir una resolución final sin sujeción a ningún otro trámite procesal cuando se trate únicamente de una controversia de derecho”. No obstante, la presente situación de hechos en la cual existe controversia acerca de las posibles violaciones al Plan de Cesantías de la Recurrida y la falta de notificación al recurrente, no permite que la controversia se dilucide sin la celebración de una vista evidenciarla adversativa. En Magriz Rodríguez v. Empresas Nativas, Inc. y otros, 143 D.P.R. 63 (1997), al interpretar la Sección 3.1 de la LPAU, 3 L.P.R.A. §2151, el Tribunal Supremo señaló lo siguiente:
“Para garantizar el objetivo de hallar la verdad y hacer justicia a las partes, tanto la Ley de Procedimiento Administrativo Uniforme, (3 L.P.R.A. see. 2151), como la jurisprudencia, han establecido que al emitirse una resolución, la agencia debe salvaguardar el derecho a la concesión de vista previa, oportuna y adecuada notificación, derecho a ser oído, confrontarse con los testigos, presentar prueba oral y escrita en su favor, y la presencia de un adjudicador imparcial. La decisión administrativa ha de ser informada con conocimiento y comprensión de la evidencia pertinente al caso. Además, deben efectuarse determinaciones de hechos y consagrar los fundamentos para la decisión administrativa". [Citas omitidas].
Estos son elementos indispensables del debido proceso de ley en los procedimientos administrativos y cualquier menoscabo de los mismos invalida los resultados del procedimiento. Acosta v. Marrieta Serv. Inc., 142 D.P.R. 927 (1997).
Toda vez que al ser privado de su empleo, el recurrente fue privado de un derecho propietario, se activó la cláusula del debido proceso de ley, y por ello resolvemos que el recurrente tenía derecho a que se celebrase una vista, a ser notificado de los señalamientos ante JASAP y a refutar la evidencia presentada en su contra. La vista señalada para el 18 de marzo de 2003 se suspendió y no fue reseñalada. Por el contrario, JASAP celebró vista el 1 de julio de 2003 sin notificar al recurrido. Resolvemos que JASAP debió notificar al recurrente la celebración de toda vista y así permitirle confrontar la evidencia en su contra y presentar cualquier prueba pertinente que interesara.
*54 La lectura del expediente de autos nos lleva a concluir que el proceso administrativo evidenció el incumplimiento del Departamento con órdenes de JASAP así como con solicitudes iniciadas por las partes afectadas. El mismo se caracterizó por ser generalizado y superficial ante los reclamos del recurrente. Sin contar con el beneficio de haber celebrado una vista evidenciaría, JASAP emitió una Resolución desestimando la apelación del recurrente. En la Resolución recurrida, JASAP esbozó las cuestiones que se dirimieron, siendo las mismas: (1) la legalidad del plan de cesantía en su implantación a tenor con las leyes aplicables; (2) la aplicabilidad a los hechos del caso de cierta Opinión del Secretario de Justicia, y (3) el posible efecto de una declaración de ilegalidad del plan de cesantía en vista de que AFASS fue eliminada.
La Resolución recurrida repetidamente señala que el Departamento cumplió a cabalidad con el Plan de Cesantías por ley requerido. Sin embargo, no hallamos prueba alguna sobre ello. El hecho de que AFASS haya sido disuelta, no es óbice para privar a los empleados afectados del examen cuidadoso de sus reclamos. Los principios básicos del debido proceso de ley requieren que los planteamientos traídos por los empleados cesanteados reciban atención adecuada. JASAP deberá, al evaluar la corrección o razonabilidad del despido del recurrente, basar su determinación en la evidencia contenida en el expediente y solicitarle al Departamento de Salud que anuncie la prueba que sostenga la corrección del despido, de forma tal que el recurrente tenga la oportunidad de examinarla y refutaría.
En conclusión, JASAP actuó de manera arbitraria al dejar- de notificar al recurrente: el señalamiento de la vista evidenciaría, la Contestación del Departamento de Salud a la Querella que presentó y la orden de presentar un memorando de derecho en apoyo de su posición. Por entender que al recurrente se le violó su derecho a ser oído y a confrontar la prueba en su contra, que emanan del debido proceso de ley, resolvemos revocar la Resolución recurrida.
IV
Por los fundamentos antes expuestos, se revoca la decisión administrativa de JASAP que deniega la apelación presentada por el recurrente. Se ordena a JASAP pautar la celebración de una vista evidenciaría adversativa para que el recurrente pueda confrontar la prueba en su contra y, a su vez, presentar la pertinente que interese para refutarla y con la continuación de los procedimientos de acuerdo con lo aquí resuelto.
Lo acordó el Tribunal y lo certifica la Secretaria Interina.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones