*999 TEXTO COMPLETO DE LA RESOLUCIÓN
I
Selenia Morán López (en adelante, la “señora Morán López") recurre de una determinación, post sentencia, emitida el 14 de agosto de 2008, por el Tribunal de Primera Instancia, Sala de Caguas, Hon. José M. Fernández Luis, Juez, en el caso First Bank v. Selenia Morán López, Civil Núm. ECD2004-1704, sobre ejecución de hipoteca por la vía ordinaria. Mediante el dictamen, notificado el 27 de agosto de 2008, se declaró Sin Lugar su Moción Se Decrete Nula Sentencia del 6 de septiembre de 2006, presentada el 29 de enero de 2008, sin someterse a la jurisdicción del tribunal, fundamentada en que no fue debidamente emplazada, como tampoco se sometió, expresa o tácitamente, a la jurisdicción del tribunal, razón por la cual, la sentencia era nula en derecho, y por lo tanto, inexistente.
Inconforme, el 11 de septiembre de 2008, la señora Morán López presentó Moción Urgente de Reconsideración, acompañándola de declaración jurada. Posteriormente, el 16 de ese mes y año, presentó documentación adicional en apoyo a su solicitud.
En consideración a que el foro recurrido no tomó acción alguna en torno a la reconsideración en el término para ello, se entendió rechazada, razón por la cual, la señora Morán López presentó su recurso ante la consideración de este foro.
Mediante Resolución de 3 de octubre de 2008, concedimos término al recurrido, Firstbank, para mostrar causa por la cual no debíamos expedir el auto y revocar la Resolución emitida el 14 de agosto de 2008. Posteriormente, la señora Morán López informó que estaba realizando gestiones en la Secretaría del Tribunal de Primera Instancia, para regrabar los procedimientos de la vista evidenciaría celebrada, a los fines de una mejor evaluación de lo planteado. En atención a ello, el 22 de octubre de 2008, concedimos término a la señora Morán López para presentar una exposición narrativa de la prueba por estipulación con el Firstbank.
Por su parte, el 12 de noviembre de 2008, el Firstbank presentó su alegato, oponiéndose a la expedición del *1000 recurso. Subsiguientemente, el 26 de noviembre de 2008, la señora Morán López replicó la posición del Firstbank. Finalmente, el 9 de diciembre de 2008, la señora Morán López presentó la transcripción de la vista evidenciaría del 1 de abril de 2008.
Resolvemos con el beneficio de los autos originales, la transcripción de la vista evidenciaría, las comparecencias de las partes, el derecho y la jurisprudencia aplicable, no sin antes exponer, en lo pertinente, lo acontecido.
II
El 29 de marzo de 1996, la señora Morán López suscribió y reconoció por valor recibido, un pagaré por $174,000, más intereses al 8 3/8% anual y demás créditos accesorios, del cual es dueño y tenedor Firstbank. En garantía del pagaré, constituyó hipoteca voluntaria, según ello surge de la Escritura Núm. 155 sobre Primera Hipoteca, otorgada en San Juan, Puerto Rico, el 29 de marzo de 1996, ante el Notario Público Michel Rachid Piñeiro, sobre la propiedad que se describe a continuación:

“RÚSTICA: Solar compuesto de SEIS MIL SETESCIENTOS TRES PUNTO CINCO MIL OCHOCIENTOS CUARENTA Y OCHO (6,703.5848) METROS CUADRADOS, localizada en el Barrio Beatriz del término municipal de Caguas, Puerto Rico. En lindes por el ESTE, con el solar A segregado; por el SUR, con la carretera estatal Número Uno (1); por el OESTE, con la Parcela Número Cinco (5), y por el NORTE con Heriberto Rodríguez.

Es el remanente de esta finca, luego de deducida una segregación al margen de la inscripción segunda.

Enclava una casa en concreto dedicada a vivienda.

Consta inscrita al Folio 261 vuelto del Tomo 792 de Caguas, Finca Número 25,959, Registro de la Propiedad de Puerto Rico, Sección Primera de Caguas. ”

Ante el incumplimiento de la señora Morán López con el contrato de préstamo hipotecario al dejar de pagar las mensualidades vencidas desde enero de 2004, Firstbank declaró vencida la totalidad de la deuda. En consideración a lo cual, el 21 de octubre de 2004, presentó su demanda sobre ejecución de hipoteca por la vía ordinaria, en contra de la señora Morán López.
El 1 de junio de 2005, archivada en los autos copia de su notificación, el 2 de ese mes y año, instancia dictó sentencia desestimando la demanda presentada por el Firstbank por haber expirado el plazo para emplazar, no obstante, habérsele extendido el término para ello. El 8 de junio de 2005, Firstbank solicitó reconsideración del dictamen y que se dictare sentencia en rebeldía. Alegó, en lo pertinente, que el emplazamiento fue debidamente diligenciado el 3 de enero de 2005, entregándosele copia de la demanda a la señora Morán López. Posteriormente, el emplazamiento debidamente diligenciado se envió al tribunal en unión a un escrito titulado Moción Solicitando se Dicte Sentencia en Rebeldía. El 16 de junio de 2005, se declaró Sin Lugar lo solicitado, expresando el tribunal que nunca se había unido al expediente el emplazamiento ni al solicitar reconsideración, por lo cual, no se demostró la jurisdicción del tribunal sobre la persona de la señora Morán López.
Así las cosas, el 24 de junio de 2005, Firstbank solicitó el relevo de la sentencia, sometiendo por primera vez, el emplazamiento alegadamente diligenciado, certificando que copia del escrito le fue enviado a la señora Morán López a la dirección que allí se consignó. Por su parte, el 6 de julio de 2005, instancia dejó sin efecto su sentencia de 1 de junio de 2005, desestimando la demanda del Firstbank, sujeto a que pagara una sanción económica a beneficio del Estado Libre Asociado de Puerto Rico, la que posteriormente consignó. Copia de la notificación del tribunal le fue cursada a la señora Morán López a la dirección que allí se consignó. No consta de los autos originales que la notificación viniere devuelta.
*1001 El 2 de agosto de 2005, Firstbank informó, que el 5 de julio de 2005, la señora Morán López se había acogido a los beneficios de la Ley de Quiebras Federal. En consideración a lo cual, el 2 de agosto de 2005, archivada en los autos copia de su notificación el 18 de ese mes y año, instancia dictó Sentencia archivando el caso por falta de jurisdicción sobre la materia, disponiendo que una vez la protección de la Corte de Quiebras cesara, Firstbank solicitara la reapertura del caso. Copia del dictamen le fue notificado a la señora Morán López, constando del expediente original del tribunal que no fue devuelto. Posteriormente, el 1 de agosto de 2006, Firstbank solicitó se continuaren los procedimientos de ejecución, por razón a que el 7 de julio de 2006, el Tribunal de Quiebras había levantado la paralización automática, notificándose copia de este escrito a la señora Morán López.
Así las cosas, sin que aún la señora Morán López hubiese contestado la demanda, el 6 de septiembre de 2006, instancia dictó Sentencia en rebeldía declarando Con Lugar la demanda de ejecución de hipoteca del Firstbank. Mediante el dictamen, archivado en los autos copia de su notificación, el 14 de ese mes y año, se condenó a la señora Morán López, al pago del principal adeudado y otros créditos allí indicados. A tenor con las disposiciones de la Regla 51.3(b) de Procedimiento Civil, se ordenó al Alguacil vender en pública subasta, a tenor con los procedimientos, la propiedad objeto de la reclamación, y del producto de la venta, procediera a pagar lo adeudado en el orden establecido en la sentencia, y de quedar algún remanente, lo depositare en la Secretaría del Tribunal, para entregarse a quien en derecho le correspondiera, previa solicitud y orden del tribunal, notificándose copia del dictamen a la señora Morán López, sin que surja del expediente original que fuera devuelto.
En consideración a que la señora Morán López no cumplió con la sentencia dictada, el 12 de febrero de 2007, Firstbank solicitó autorización para ejecutarla mediante la venta de la propiedad en pública subasta. El 12 de septiembre de 2007, el Alguacil del Tribunal de Primera Instancia, Sala de Caguas, expidió el Edicto de Subasta, pautándose para el 14 de noviembre de 2007, a las 9:30 a.m., la venta de la propiedad (primera subasta) y de no producirse remate o adjudicación, se celebraría una segunda subasta el 28 de noviembre de 2007, a la 1:30 p.m.; y de producirse igual resultado se celebraría una tercera subasta el 5 de diciembre de 2007, a la 1:30 p.m.
A la primera subasta señalada para el 14 de noviembre de 2007, siendo las 9:30 a.m. se dio por abierta la subasta, compareciendo la licenciada Natalia Dávila en representación de Firstbank, quien ofreció la cantidad de $174,000 por la propiedad subastada, cantidad que se acreditaría a la sentencia dictada. Habiendo transcurrido un tiempo razonable sin que se mejorare la oferta del Firstbank, luego de haberse anunciado, en voz alta y por tres (3) veces consecutiva, se procedió a adjudicarse la buena pro al Firstbank, por la suma ofrecida. En el Acta de Subasta se expresó, que una vez efectuada la venta judicial, se procedería a poner al licitador victorioso en posesión física de la propiedad, mediante el lanzamiento de los ocupantes dentro del término legal de veinte (20) días a partir de la fecha de la venta judicial.
El 16 de noviembre de 2007, a los fines de que se le pusiera en posesión física de la propiedad subastada, Firstbank solicitó el lanzamiento o desalojo de los ocupantes de la propiedad. En consideración a lo cual, el 10 de diciembre de 2007, instancia ordenó a su secretaria, emitir un Mandamiento dirigido al Alguacil del Tribunal de Primera Instancia, Sala de Caguas, para que procediera a poner al Firstbank en posesión del inmueble subastado. Surge de los autos originales, que el 28 de enero de 2008, la Alguacil Auxiliar, Ivonne Benitez, del Tribunal de Primera Instancia, Sala de Caguas, en ocasión de diligenciarse el Mandamiento de Desahucio y proceder con la entrega de la propiedad al Firstbank, se encontró que la propiedad estaba desocupada, libre y expedita, procediendo a entregársela personalmente al señor Elias Díaz, representante del Firstbank. Es menester señalar, que desde el 3 de enero de 2005, cuando Firstbank alegó que la señora Morán López fue emplazada, ésta no hizo gestión alguna en instancia, excepto las que a continuación señalaremos.
Luego de otros incidentes procesales, sin someterse a la jurisdicción del tribunal, el 29 de enero de 2008, la señora Morán López solicitó se decretare nula la sentencia dictada en su contra el 6 de septiembre de 2006. Acompañó a su solicitud, una declaración jurada suya, alegando qué no fue emplazada por el señor Richard Lorenzo Ramos, ni que éste le entregare emplazamiento alguno o copia de la demanda a que se contrae la *1002 sentencia. Adujo que en consideración a que la sentencia fue dictada sin jurisdicción, resultaba ser nula en derecho y por lo tanto inexistente. Posteriormente, el 19 de febrero de 2008, notificada el 19 de marzo de ese año, instancia señaló vista evidenciaría para el 1 de abril de 2008, a la 1:30 p.m.
Por otro lado, el 20 de febrero de 2008, Firstbank, en escrito titulado Oposición a Moción Solicitando se Decrete Nula la Sentencia del 6 de septiembre de 2006, se opuso a la solicitud de la señora Morán López. Acompañó a su solicitud: a) copia del emplazamiento diligenciado por el señor Richard Lorenzo Ramos el 3 de enero de 2005, en la persona de la señora Morán López; b) copia del Statement of Financial Affairs, presentado por la señora Morán López, en la Corte de Quiebras para el Distrito de Puerto Rico, en el que se hace referencia al caso de ejecución presentado por el Firstbank, identificándolo por su número, ECD2004-1704 y el tribunal en que se encuentra presentado; y c) comunicación de 14 de julio de 2005, del licenciado Juan R. Sierra, representante de la señora Morán López, dirigida al licenciado Gerardo Pavía, representante del Firstbank, informándole que representa a la señora Morán López, quien el 5 de julio de 2005, presentó una solicitud voluntaria de quiebra bajo el Capitulo 13 de la Ley de Quiebra, razón por la cual estaba impedido de tomar alguna acción para cobrar cualquier deuda de su cliente.
Por su parte, tras otros incidentes, el 27 de marzo de 2008, la señora Morán López, sin someterse a la jurisdicción del tribunal, replicó a la oposición del Firstbank. Acompañó con su réplica dos (2) declaraciones juradas: a) una del 27 de marzo de 2008, expresando que nunca fue emplazada por emplazador alguno, no se le entregó emplazamiento o copia de la demanda, y para el 3 de enero de 2005, fecha en que alegadamente fue emplazada, estuvo de viaje fuera de Puerto Rico en Orlando, Florida; y b) otra declaración jurada del 10 de marzo de 2008, del licenciado Sierra haciendo constar que su comunicación al Firstbank sobre la presentación del caso de quiebras, no significaba que la señora Morán López hubiese sido emplazada.
Así las cosas, el 1 de abril de 2008, se celebró la vista evidenciaría, marcándose como exhibits del Firstbank y de la señora Morán López, varios documentos. Concluido los testimonios, el licenciado Pavía expresó que solicitaría al tribunal una orden dirigida a American Airlines para que proveyera información en torno a si la señora Morán López estuvo de viaje para la fecha en que fue emplazada, sometiendo posteriormente, el 17 de abril de 2008, un proyecto de orden, el que fue expedido el 6 de mayo de ese año.
El 5 de agosto de 2208, el licenciado Pavía sometió a instancia un escrito titulado Moción Sometiendo Comunicación de American Airlines y Solicitando se Declare No Ha Lugar Solicitud se Declare Nula Sentencia del 6 de septiembre de 2006. En esa comunicación de American Airlines de 14 de julio de 2008, del Departamento Legal de American Airlines al licenciado Pavía, American Airlines expresa, que sus récords indicaban que para diciembre 23 del 2004, se realizaron cuatro (4) vuelos, saliendo de San Juan, Puerto Rico, a Orlando, Florida, y el 10 de enero de 2005, cuatro (4) vuelos saliendo de Orlando, Florida, a San Juan, Puerto Rico; que de la revisión a la lista de pasajeros de esos vuelos, no pudieron localizar a pasajero alguno con el nombre de Selenia Morán López, o a pasajero alguno con variantes de dicho nombre.
Por su parte, el 6 de agosto de 2008, la señora Morán López se opuso a la solicitud del Firstbank solicitando se declarare nula la sentencia del 6 de septiembre de 2006. Señaló, en primer lugar, que era incorrecta su alegación, respecto a que la Orden dirigida a la línea aérea para certificar si la señora Morán López había volado o no, en esa línea, fue a petición de las partes, y sí a sugerencia de Firstbank, a lo que no se opuso. En segundo lugar, la comunicación del funcionario de American Airlines, la cual no era concluyente para la controversia, ni la señora Morán López se comprometió a considerarla como tal, no estaba juramentada, constituyendo prueba de referencia, requiriendo que el funcionario que la suscribía, fuera contrainterrogado en cuanto al método y manera que utilizó para llegar a su conclusión. Solicitó se señalare una continuación de la vista para presentar prueba de refutación en torno a la comunicación y contrainterrogar al funcionario que la suscribió.
Así las cosas, el 14 de agosto de 2008, notificada el 27 de ese mes y año, instancia emitió su Resolución, *1003 objeto del recurso, declarando Sin Lugar la solicitud de relevo de sentencia de la señora Morán López. Evaluado los testimonios y documentos, concluyó como hechos probados lo que a continuación transcribimos:

“1. Richard Lorenzo Ramos recibió la encomienda de diligenciar el emplazamiento de Selenia Morán López■ Se dedicaba en ese entonces a esas tareas. El 3 de enero de -2005, llegó al Barrio Beatriz de Caguas y en un negocio preguntó. Allí se le refirió a la ubicación de la propiedad. Cuando llegó a eso de las diez de la mañana, unas personas estaban trabajando. Salió una señora que se identificó como Selenia Morán y le entregó la demanda y el emplazamiento;

2. En la demanda se reclamaba el pago de $160,111.70 y $22,597.80 en otros conceptos. Ella (la señora Morán López) le pidió ayuda al diligenciante. Este la refirió al abogado del banco. El se limitó a remitir el emplazamiento diligenciado al letrado que le hizo la encomienda el día 3 de enero de 2005. ”

Instancia expresó que la cuestión a resolver era el hecho de si era o no cierto que el emplazador diligenció en la persona de la señora Morán López el emplazamiento, quien declaró no estar en Puerto Rico el día del diligenciamiento. No obstante, la línea aérea certificó en atención a lo ordenado, que ningún pasajero con el nombre de Selenia Morán López viajó en los días a que se contrae el emplazamiento a y desde Orlando, Florida. Escuchados los testimonios del emplazador y de la señora Morán López, instancia le dio credibilidad al emplazador. Expresó que el hecho de que la agencia de viajes haya cobrado un cheque por $2,569.94 de la Administración del Sistema de Retiro, no significa que el viaje de la señora Morán López se hubiese realizado en las fechas proyectadas; que la señora Morán López se acogió a la quiebra en julio de 2005, siendo el único acreedor en el listado el Firstbank; se notificó de todos los escritos e incidencias tanto al tribunal, como al representante legal de la parte adversa: y el planteamiento de nulidad del diligenciamiento del emplazamiento aguardó hasta después de la adjudicación por subasta del inmueble.
En consideración a lo cual, declaró sin lugar la solicitud de relevo de sentencia de la señora Morán López, toda vez que la prueba estableció la corrección del diligenciamiento del emplazamiento en su persona.
Es menester señalar que el 25 de agosto de 2008, antes de ser notificada la Resolución del 14 de agosto de 2008, Firstbank presentó escrito titulado Réplica a Moción en Oposición, replicando al escrito de oposición de la señora Morán López. Expresó que, no obstante a que el proyecto de orden emitido por instancia fue sometido por Firstbank, el proyecto fue consultado previo a su presentación, con el licenciado Raúl Barreras Morales, representante legal de la señora Morán López, quien estuvo de acuerdo conque la orden dispusiera que la solicitud había sido hecha por el demandante y la demandada, véase comunicación fechada 17 de abril de 2008, del licenciado Morales Barreras al licenciado Pavía, representante del Firstbank en torno al proyecto de resolución dirigido a American Airlines. Por otro lado, Firstbank indicó que independientemente de lo dispuesto por la orden, la realidad fue que al 1 de abril de 2008, las partes solicitaron a instancia que ordenara a American Airlines certificar si la señora Morán López aparecía en las listas de pasajeros de los correspondientes vuelos, aceptando que la certificación fuera parte del caso.
Firstbank concluyó que la evidencia presentada en la vista celebrada el 1 de abril de 2008, en unión a la certificación que las partes aceptaron solicitar a American Airlines para ser sometida al tribunal, era evidencia suficiente para que la solicitud de nulidad de sentencia presentada por la señora Morán López, debía ser declarada no ha lugar.
Inconforme, la señora Morán López le imputa error a instancia; a) al emitir su Resolución de 14 de agosto de 2008, declarando Sin Lugar su Solicitud de Nulidad de Sentencia; y b) al no tomar acción sobre su solicitud de reconsideración.
III
El emplazamiento es el mecanismo procesal de notificación que se utiliza para que un tribunal pueda adquirir *1004 jurisdicción sobre la persona del demandado, de forma tal que éste quede obligado por el dictamen que finalmente se emita. Su propósito principal es notificar al demandado, a grandes rasgos, de que se ha instado una acción judicial en su contra, para así garantizarle su derecho a ser oído y defenderse si así lo desea.
El concepto de "jurisdicción in personam" está intrínsecamente atado al debido proceso de ley. Márquez Resto v. Barreto Lima, 143 D.P.R. 137, 142 (1997); Reyes v. Oriental Fed. Savs. Bank, 133 D.P.R. 15, 21 (1993). Con relación a la jurisdicción in personam, un tribunal puede adquirirla de dos (2) maneras: (1) utilizando adecuadamente los mecanismos procesales de emplazamientos provistos en las Reglas de Procedimiento Civil, o (2) mediante la sumisión voluntaria de la parte demandada a la jurisdicción del tribunal. Márquez, 143 D.P.R., a la pág. 143.
Además, para que un tribunal adquiera jurisdicción sobre la persona de un demandado, el debido proceso de ley requiere que se le notifique adecuadamente sobre la reclamación que hay en su contra y que, además, se le brinde la oportunidad de ser oído antes de que se adjudiquen sus derechos. León García v. Rest. El Tropical, 154 D.P.R. 249, 258 (2001); Ind. Siderúrgica v. Thyssen Steel Caribbean, 114 D.P.R. 548, 559 (1983).
En atención a la primera forma, es decir, el utilizar el mecanismo procesal del emplazamiento de las Reglas de Procedimiento Civil, el emplazamiento constituye “el paso inaugural del debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial" dentro de nuestro sistema adversativo judicial. Acosta v. ABC, Inc., 142 D.P.R. 927, 931 (1997); Reyes Martínez v. Oriental Federal Savings Bank, 133 D.P.R. 15, 22 (1993); Pagán v. Rivera Burgos, 113 D.P.R. 750, 754 (1983). Ello contempla la dualidad de propósitos que persigue el mecanismo del emplazamiento, a saber, por un lado notificar a la parte demandada en un pleito civil que se ha instado una reclamación judicial en su contra y garantizarle su derecho a ser oído y defenderse. Datiz v. Hospital Episcopal, 163 D.P.R. 10, 15 (2004); Banco Central Corp. v. Capitol Plaza, 135 D.P.R. 760, 763 (1994), y, por otro lado, constituye el medio por el cual los tribunales adquieren jurisdicción sobre la persona del demandado, de forma tal que éste quede obligado por el dictamen que finalmente se emita. Márquez, 143 D.P.R., a la pág. 142.
Debido a que el adecuado diligenciamiento del emplazamiento constituye un imperativo constitucional del debido proceso de ley, se exige un cumplimiento estricto cuando del cumplimiento de sus requisitos se trata. Chase Manhattan Bank v. Polanco Martínez, 131 D.P.R. 530, 535 (1992). Su propósito principal es notificar al demandado, a grandes rasgos, de que se ha instado una acción judicial en su contra, para así garantizarle su derecho a ser oído y defenderse si así lo desea. De no cumplirse con estos requisitos, el tribunal no adquiere jurisdicción sobre la persona del demandado.
A tales efectos, todo demandado tiene el derecho a ser emplazado conforme a derecho y existe en nuestro ordenamiento una política pública de que la parte demandada debe ser emplazada debidamente para evitar el fraude y que se utilicen procedimientos judiciales con el propósito de privar a una persona de su propiedad fuera del debido proceso de ley. Quiñones Román v. Cía. ABC, 152 D.P.R. 367, 374 (2000); First Bank of P.R. v. Inmob. Nac., Inc., 144 D.P.R. 901, 916 (1998).
Sin embargo, este trámite no es necesario cuando la persona con plena capacidad legal comparece voluntariamente, realizando algún acto que le constituya como parte en el pleito, confiriendo jurisdicción sobre su persona al tribunal. Claudio v. Casillas Mojica, 100 D.P.R. 761, 772 (1972).
Por su parte, la Regla 43.2 de Procedimiento Civil, 32 L.P.R.A Ap. Ill, R. 43.2, dispone, en lo pertinente, que “las determinaciones de hechos basadas en testimonio oral no se dejaran sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. ” Su propósito es tener una clara comprensión de la base en que descansa la decisión apelada. Su fin es poner al foro apelativo en condiciones de poder determinar si las conclusiones de hechos y de derecho a que llegó el tribunal sentenciador estuvieron justificadas o no. Firpi v. Pan American World Airways, *1005 89 D.P.R. 197, 218 (1963). Por ello, en cuanto a la apreciación de la prueba desfilada ante el Tribunal de Primera Instancia, nuestro Tribunal Supremo reiteradamente ha señalado que el alcance de la revisión judicial sobre cuestiones de hechos está regulado por lo dispuesto en la referida Regla 43.2 de Procedimiento Civil.
Por ello, nuestro alto foro ha establecido que no debemos intervenir con las determinaciones de hechos que hace un Tribunal de Primera Instancia y sustituir nuestro criterio por el del juzgador, .ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su demeanor. Ramos Acosta v. Caparra Dairy Inc, 113 D.P.R. 357, 365 (1982).
"... y es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y, sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer, incluso, más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad; la observación... ”. Ortiz v. Cruz Pabón, 103 D.P.R. 939, 947 (1975).
Por su parte, la Regla 44(B)(1) de las Reglas de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. IV, R. 44(B)(1), en torno a los medios de impugnación de un testigo, dispone, en lo pertinente, que su credibilidad podrá ser impugnada o sostenida mediante el comportamiento mientras declara y la forma en que lo hace.
De ahí la norma trillada de “no intervenir con la apreciación que de la prueba desfilada haya hecho el foro de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto”. Monllor Arzola v. Sociedad de Gananciales, 138 D.P.R. 600, 610 (1995); Sánchez Rodríguez, v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez Cruz v. Hospital La Concepción, 115 D.P.R. 721, 728 (1984). No obstante, “[ejl arbitrio del juzgador de hechos es respetable, mas no es absoluto. Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal”. Ramos Acosta, 113 D.P.R., a la pág. 365.
Así pues, los foros apelativos pueden dejar sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que “del examen de la totalidad de la evidencia, el Tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como es el caso en que las conclusiones de hechos están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida”. Véase, Maryland Casualty Co. v. Quick Const. Corp., 90 D.P.R. 329, 336 (1964).
En el presente caso, luego de otros incidentes, el 6 de septiembre de 2006, instancia dictó sentencia declarando Ha Lugar la demanda de ejecución de hipoteca presentada por el Firstbank, archivándose en los autos copia de su notificación el 14 de ese mes y año, ordenándose al Alguacil vender en pública subasta, la propiedad objeto de la reclamación. Copia del dictamen le fue notificado a la señora Morán López, sin que surgiera del expediente que fuera devuelto.
Posteriormente, el 29 de enero de 2008, la señora Morán López solicitó, bajo juramento, se decretare nula la sentencia del 6 de septiembre de 2006, bajo el fundamento de que no fue debidamente emplazada y notificada de la demanda.
Por su parte, el 20 de febrero de 2008, Firstbank se opuso a lo solicitado reafirmándose en que la señora Morán López fue personalmente emplazada. Incluyó junto a su oposición, copia del emplazamiento diligenciado, documento titulado “Statement of Financial Affairs” suscrito por la señora Morán López y comunicación dirigida al Firstbank notificando la presentación de la Petición de Quiebras. Ambos documentos hacen referencia al caso que nos ocupa, es decir, al caso presentado ante el Tribunal de Primera Instancia, identificándolo con su número de presentación, ECD2004-1704, sobre cobro de dinero y ejecución de hipoteca.
*1006 Por su parte, el 27 de marzo de 2008, la señora Morán López replicó a la oposición del Firstbank, alegando que a la fecha del diligenciamiento del emplazamiento se encontraba de viaje en Orlando, Florida. En apoyo de sus alegaciones, incluyó declaración jurada suscrita por ella y otra suscrita por el licenciado Juan R. Sierra, su representante legal ante el Tribunal de Quiebras.
Así las cosas, se celebró una vista evidenciaría, escuchándose los testimonios de la señora Morán López, del emplazador Richard Lorenzo y del señor Gerardo Durieux, oficial del Firstbank. Además, se marcaron como exhibits: a) copia del cheque 1-0311766 por $2,569.94 del 2 de diciembre de 2004, expedido por la Administración de los Sistemas de Retiro de los Empleados del Gobierno y' la Judicatura; b) certificación de la agencia de viajes Aida’s Travel; c) Emplazamiento a la señora Morán López, debidamente diligenciado y juramentado; d) demanda presentada el 21 de octubre de 2004; y e) Memorando del Firstbank del 3 de enero de 2005 y su hoja de confirmación. Concluida la vista, el representante del Firstbank expresó que solicitaría del tribunal una orden a los fines de que American Airlines proveyera información en torno a las fechas que alegadamente la señora Morán López viajó a Orlando, Florida.
Posteriormente, luego evaluar los testimonios vertidos, así como la prueba documental, el 14 de agosto de 2008, el tribunal emitió la resolución objeto del recurso, declarando sin lugar la solicitud de nulidad de la sentencia presentada por la señora Morán López. Determinó los hechos probados, expresando que la cuestión a resolver era si el emplazamiento fue diligenciado en la persona de la señora Morán López, como alegaba su diligenciante, el señor Lorenzo Ramos. Le dio credibilidad al testimonio del señor Ramos, expresando además, que en su testimonio la señora Morán López alegó no haber estado en Puerto Rico el día del diligenciamiento, no obstante la línea área donde alegadamente viajó de Puerto Rico a Orlando y de Orlando a Puerto Rico, American Airlines, comunicó que ningún pasajero con ese nombre viajó en esos días, a, y desde Orlando.
El tribunal expresó que no obstante a que la agencia de viajes hubiese cobrado un cheque por $2,569.94 de la Administración de Sistemas de Retiro, no significaba que el viaje se realizó en las fechas programadas; existía la declaración del emplazador y la entrega del documento al abogado del Firstbank; que ese mismo día 3 de enero de 2005, fecha del diligenciamiento del emplazamiento, los abogados enviaron un fax al cliente, señalando haber confirmado gastos y honorarios. Por otro lado, se expresó que la señora Morán López presentó una solicitud de quiebra en julio del 2005, consignando como su único acreedor en la Petición de Quiebras sometida, al Firstbank. Por último, instancia expresó que todos los escritos y sus incidencias en el caso fueron notificados a la señora Morán López, tanto por el tribunal como por su representante legal; no obstante, ésta aguardó hasta después de que el inmueble se le adjudicara al Firtsbank para hacer su planeamiento de nulidad del diligenciamiento del emplazamiento.
Por otro lado, nuestro ordenamiento jurídico exige una serie de requisitos con los que deben cumplir los procedimientos adversativos de forma cónsona con el debido proceso de ley, en su dimensión procesal. Estos son: a) notificación adecuada de la reclamación presentada; b) proceso ante un juzgador imparcial; c) oportunidad de ser oído; d) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; e) tener asistencia de abogado; y f) que la decisión se base en el récord. Álvarez v. Arias, 156 D.P.R. 352, 365 (2002); Feliciano Figueroa, et. als. v. Tosté Piñero, 134 D.P.R. 909, 914-915 (1993); Rivera Rodríguez & Co. v. Stowell Taylor, Ect., 133 D.P.R. 881, 889 (1993). También se ha establecido que como parte del debido proceso de ley, todo individuo tiene derecho de presentar prueba oral y escrita a su favor. López y otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 98, 114 (1996).
Nuestro Tribunal Supremo ha pronunciado en innumerables ocasiones que el derecho al debido proceso de ley no es un molde riguroso que se da en el abstracto, pues su naturaleza es eminentemente circunstancial y pragmática. Pueblo v. Andréu González, 105 D.P.R. 315, 320 (1976); Domínguez Talayera v. Tribunal Superior, 102 D.P.R. 423, 428 (1974).
*1007 Aunque es cierto que el derecho constitucional al debido proceso de ley exige la concesión de vista, el derecho a ser oído, presentar prueba y confrontar a los testigos, el mismo no priva a los tribunales de su discreción para controlar los procesos ante sí. Ello es así de conformidad con la clara y firme política de que los casos sean resueltos en sus méritos. Neptune Packing Corp. v. Wackenhut Corp., 120 D.P.R. 283, 293 (1988).
En el presente caso, a la señora Morán López se le garantizaron todos los derechos exigidos por nuestro ordenamiento jurídico.
En consideración a lo expuesto, la prueba creída por instancia establece la corrección del diligenciamiento del emplazamiento en la persona de la señora Morán López, por lo cual el primer error no fue cometido. Por otro lado, no vemos acción incorrecta alguna por instancia en torno a no haber tomado acción alguna de la reconsideración presentada por la señora Morán López.
En mérito de lo cual, denegamos la expedición del auto solicitado por la señora Selenia Morán López.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones